# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK H., individually and as
Guardians Ad Litem of Michelle
H. and Natalie H., minors; RIE H.,
individually and as Guardians Ad
Litem of Michelle H. and Natalie
H., minors,
            *Plaintiffs-Appellants,*

            v.

PATRICIA HAMAMOTO, in her official
capacity as Superintendent of the
Hawaii Department of Education;
DEPARTMENT OF EDUCATION,
STATE OF HAWAII,
            *Defendants-Appellees.*

No. 09-15754

D.C. No.
1:00-cv-00282-
MLR-LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Manuel L. Real, District Judge, Presiding

Argued and Submitted
June 18, 2010—Honolulu, Hawaii

Filed August 26, 2010

Before: Betty B. Fletcher, Harry Pregerson, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Pregerson

**COUNSEL**

Davis Levin Livingston, Stanley E. Levin, and Michael K. Livingston, Honolulu, Hawaii, and Keith H.S. Peck, Peck & Associates, Honolulu, Hawaii, for the plaintiffs-appellants.

Mark J. Bennett, Attorney General of Hawaii, and Dorothy Sellers, Hawaii Solicitor General, Honolulu, Hawaii, for the defendants-appellees.

**OPINION**

PREGERSON, Circuit Judge:

Following remand from our court, *Mark H. v. Haw. Dep't of Educ.*, 513 F.3d 922 (9th Cir. 2008), Mark H. and Rie H., individually and as guardians ad litem for their daughters Michelle H. and Natalie H., (collectively "H. Family") filed an amended complaint against the Hawaii Department of Education (acting through its employees), and Patricia Hamamoto, in her official capacity as Superintendent of the Hawaii Department of Education (collectively "Hawaii DOE"). In their amended complaint, the H. Family sought damages for Hawaii DOE's alleged violations of the Rehabilitation Act § 504.

Specifically, the H. Family alleged that, from 1994 to 1999, Hawaii DOE denied Michelle and Natalie meaningful access to the benefits of a public education in two key ways: (1) by failing to provide the girls with reasonable accommodations for their disabilities through autism-specific special education services, and (2) by failing to design the girls' Individualized Education Programs ("IEPs") to meet the girls' needs as adequately as the needs of non-disabled students were met. The H. Family alleged that these failures were the result of the Hawaii DOE's deliberate indifference and therefore violated the Rehabilitation Act § 504, giving rise to a private cause of action for damages.

The district court granted summary judgment in favor of Hawaii DOE. The H. Family appealed. For the reasons explained in detail below, we reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Undisputed Facts

The following facts are undisputed. Michelle and Natalie both have autism. Because of their autism, both girls have sig-

nificant barriers to learning. The girls are essentially non-verbal and have a limited ability to have meaningful interactions with others.

In 1994, Hawaii DOE and the Hawaii Department of Health entered into the *Felix* consent decree. In the *Felix* decree, the two state agencies recognized that they had violated the federal Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act by failing to provide necessary education and mental health services to qualified handicapped children. The *Felix* decree requires the two agencies to work together to provide the services necessary to enhance the likelihood of positive learning outcomes for students with disabilities, including autism. Ultimately, Hawaii DOE is responsible for ensuring that its students receive appropriate special education services.

In 1994, when Michelle was three years old, Hawaii DOE found her eligible for special education services. That same year, a Hawaii Department of Health psychologist diagnosed Michelle with autism and informed Hawaii DOE of his diagnosis. The Department of Health psychologist recommended that Hawaii DOE provide Michelle with numerous autism-specific services.[1] Hawaii DOE did not implement these recommendations.

Hawaii DOE also found Natalie eligible for special education services in 1994, when Natalie was two years old. In 1995, Hawaii DOE identified Natalie as eligible for special education services based on early childhood learning impairment. That same year, Kaiser, the H. Family's medical pro-

---

[1] "Autism-specific services" as used in this opinion refers to the specific mental health and special education services that Hawaii Department of Health psychologists recommended that Michelle and Natalie receive because of their autism (such as intensive behavioral therapy), as distinguished from the general special education services that the girls received (such as placement in a special education class with a teacher who had no special training in teaching children with autism).

vider, diagnosed Natalie with autism. Hawaii DOE noted Natalie's autism diagnosis in her 1995 IEP.[2]

## B. Disputed Facts

The H. Family made the following allegations in their amended complaint, which Hawaii DOE disputed as either untrue or not established by the record. At the time the girls were diagnosed as autistic, they were capable of benefitting from a public education by learning effective speech and communication skills, but only with the help of autism-specific services. Hawaii DOE knew that the girls needed autism-specific services, were entitled to receive these services, and that it was obligated to provide those services. From 1994 to 1999, Hawaii DOE neither provided the girls with the autism-specific services they needed to access the benefits of a public education nor designed the girls' IEPs to meet the girls' needs as adequately as the needs of non-disabled students were met. The H. Family contends that these failures were the result of the Hawaii DOE's deliberate indifference to the girls' needs and their federally protected rights.

The H. Family supported these allegations with reports and other documentation prepared by Dr. Daniel B. LeGoff, a licensed psychologist and pediatric neuro-psychologist who worked for the Hawaii Department of Health both directly and as a consultant. Dr. LeGoff provided an analysis of the special needs of autistic children. According to Dr. LeGoff, children with autism do not learn in the same ways as normal children. Rather, children with autism need specialized teaching that incorporates repetition, routine, and behavioral reinforcement. It is widely recognized by psychologists and other mental health experts that children with autism typically need

---

[2]Under the Individuals with Disabilities Education Act, public schools are required to develop IEPs for each qualifying student with a disability to address the student's specific needs. 20 U.S.C. § 1414(d).

to receive autism-specific services in order to learn and develop. These autism-specific services include behavioral therapies such as "Discrete Trial Training," use of a dedicated therapeutic aide in the classroom, and "structured teaching" programs.[3] Children with autism who receive early, autism-specific services typically experience much greater development of their cognitive, adaptive, communication, and social skills than children with autism who do not receive such services.[4]

Dr. LeGoff reported that Hawaii DOE did not provide either Michelle or Natalie with any autism-specific services prior to 1998, when Michelle was six years old and Natalie was five years old. Although Hawaii DOE did provide the girls with some speech and occupational therapy, those services were delivered without consultation with autism or mental health specialists.

In 1998, four years after the first Department of Health psychologist recommended that Hawaii DOE provide Michelle with numerous autism-specific services, Dr. LeGoff provided Hawaii DOE with specific recommendations regarding the autism-specific services Michelle and Natalie needed. According to Dr. LeGoff, when he first made his recommendations to the girls' school, the school principal refused to include these recommendations in the girls' IEPs.

In 1999, the H. Family filed an administrative action against Hawaii DOE under IDEA and the Rehabilitation Act § 504. The hearing officer in that action made a number of

---

[3]This is an illustrative, not an exhaustive, list. Additionally, although Dr. LeGoff, and other psychologists, agree that Michelle and Natalie needed these services because of their autism and that "best practices" for teaching children with autism include these services, we recognize the possibility that children with other disabilities might also need some of these same services.

[4]In this context, "early" means preschool age and younger.

factual findings relevant to this appeal. The hearing officer found that from 1994 to 1998, Hawaii DOE did not provide autism-specific services to the girls, although such services were available. Additionally, the hearing officer found that Hawaii DOE did not include autism-specific services in the girls' IEPs before 1999. Based on these facts, the hearing officer determined that prior to the hearing, the girls had not received "such services as are necessary to permit the child[-ren] to benefit" from their education.

The H. Family's allegations also find support in the deposition testimony of several individuals. Paula Maruyama, Michelle's preschool teacher, testified that Michelle and Natalie should have had intensive instruction throughout the school year, but did not receive it. Michelle and Natalie's father testified at his deposition that from 1994 to 1998, the girls "were warehoused and put in a classroom with somebody who sat on the other side of the room and did very little."

According to Pauline Kokubun, a Hawaii DOE employee responsible for coordinating services for children with disabilities, from 1994 to 1999, Hawaii DOE was providing other autistic students with autism-specific services, including assistance from in-classroom therapeutic aides and Discrete Trial Training. Kokubun's account is corroborated by a report prepared by Dr. LeGoff that explains that at least three Department of Health autism specialists were actively providing autism-specific interventions to other Hawaii DOE students during this time period.

Eventually, all the relevant Hawaii DOE employees agreed that the Michelle and Natalie needed, and could receive, the autism-specific services that Dr. LeGoff recommended. By 2003, after the administrative hearing, the girls had a teacher trained in autism-specific instruction, attended special after-school mental health programs, and were receiving behavioral intervention services. Since Hawaii DOE began providing

these services, the girls have made some developmental progress, but their social and communication skills, as well as their ability to have meaningful interpersonal interactions, remain limited.

Dr. LeGoff concludes that it is likely that the girls would have made significantly more progress had they received the appropriate services sooner. According to Dr. LeGoff, Hawaii DOE's failure to provide appropriate autism-specific services to the girls from 1994 to 1999 amounted to a "tragic loss" of developmental opportunity for the girls. Likewise, at the administrative hearing, several experts testified that Hawaii DOE's failure to provide Michelle and Natalie with timely autism-specific services caused irreparable harm to both girls.

## C.  Procedural History

The procedural history in this case is replete with evidence of the girls' autism and Hawaii DOE's willful refusal to acknowledge it and provide autism-specific services.

As noted above, in 1999, the H. Family filed an administrative action against Hawaii DOE claiming violations of IDEA and the Rehabilitation Act § 504.[5] In that action, an administrative hearing officer found that Hawaii DOE had denied Michelle and Natalie a Free Appropriate Public Education ("FAPE") under IDEA and that the girls' IEPs were inade-

---

[5]IDEA and the Rehabilitation Act are both federal anti-discrimination statutes that provide causes of action for children with disabilities. *Mark H. v. Haw. Dep't of Educ.*, 513 F.3d 922, 928-29 (9th Cir. 2008). "While the IDEA focuses on the provision of appropriate public education to disabled children, the Rehabilitation Act of 1973 more broadly addresses the provision of state services to disabled individuals." *Id.* at 929. The remedies available under IDEA are limited and do not include compensatory damages. *Id.* at 929. The remedies available under Rehabilitation Act § 504 are broader and include compensatory damages. *Id.* at 930.

quate. The hearing officer ordered Hawaii DOE to remedy the violations.[6]

In 2000, the H. Family sued Hawaii DOE in federal district court, seeking damages for alleged violations of Rehabilitation Act § 504. The H. Family's theory was that because both IDEA and the regulations implementing Rehabilitation Act § 504 guarantee children with disabilities the right to a FAPE, they could prevail in their claim for damages under the Rehabilitation Act by establishing that Hawaii DOE violated Michelle and Natalie's right to a FAPE under IDEA.

In the 2000 case, the district court held that there was no private right of action to enforce the FAPE required by the regulations implementing the Rehabilitation Act § 504. The district court further held that the H. Family failed to establish a violation of § 504 because "the plaintiffs do not present any evidence that they were intentionally discriminated against solely by reason of their disability."

The H. Family appealed. In that appeal we held that although there is a private right of action under Rehabilitation Act § 504, simply establishing a violation of the right to a FAPE under IDEA is not sufficient to prevail in a § 504 claim for damages. *Mark H.*, 513 F.3d at 924-25. Plaintiffs may prevail in a § 504 claim for damages, we held, by establishing that an organization that receives federal funds violated § 504 "intentionally or with deliberate indifference." *Id.* at 938. Plaintiffs may establish that an organization violated § 504 by showing that the public entity discriminated against, excluded, or denied the benefits of a public program to a qualified person with a disability. *Id.* at 937. This includes showing that the public entity denied the plaintiff a reasonable accommodation. *Id.* A violation of one of the regulations

---

[6]The H. Family do not contend that Hawaii DOE failed to comply with that administrative order, which was not appealed, or that Michelle and Natalie are currently being denied a FAPE as defined by the IDEA.

implementing § 504 may support a claim for damages if the violation denied the plaintiff meaningful access to a public benefit, and the defendant organization acted with deliberate indifference. *Id.* at 938-39. Having so clarified the legal standards, we remanded with the direction that the H. Family be given the opportunity to amend their complaint. *Id.* at 939.

In 2008, the H. Family filed an amended complaint (the complaint at issue in this appeal). In their amended complaint, the H. Family alleged that Hawaii DOE violated Rehabilitation Act § 504 by: (1) failing to provide the girls with the reasonable accommodation of their disabilities in the form of autism-specific special education services, and (2) failing to design the girls' IEPs to meet the girls' needs as adequately as the needs of non-disabled students were met, as required by 34 C.F.R. § 104.33(b)(1)(i). Additionally, the H. Family alleged, Hawaii DOE acted with deliberate indifference.

Hawaii DOE moved for summary judgment. The district court found that Hawaii DOE's obligation to provide Michelle and Natalie meaningful access to a public education under Rehabilitation Act § 504 required only that Hawaii DOE "design education programs for [Michelle and Natalie] that are intended to meet their educational needs to the same degree that the needs of nondisabled students are met, not more. Further, the district court found that there was "no genuine issue of material fact as to whether the girls were denied 'meaningful access' " because the H. Family failed to present specific facts comparing the design of their children's education with that of non-disabled students. The district court also found that the H. Family failed to present a genuine issue of material fact as to whether Hawaii DOE acted with deliberate indifference. On these bases, the district court granted Hawaii DOE's motion for summary judgment. The H. Family timely appealed.

## II.  STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.

2000). "[This] review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001) (internal citations omitted). Under this standard, "[w]e may affirm a summary judgment only if, viewing the evidence in the light most favorable to the party against whom it is granted, we find no genuine issue of material fact, and we find that the prevailing party is clearly entitled to judgment as a matter of law." *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1189 (9th Cir. 1988). "All justifiable factual inferences must be drawn in [ ] favor [of the nonmoving party], and we must reverse the grant of summary judgment if any rational trier of fact could resolve a material factual issue in [ ] favor [of the nonmoving party]." *Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 720 (9th Cir. 2009).

## III.   DISCUSSION

**[1]** Rehabilitation Act § 504 forbids organizations that receive federal funding, including public schools, from discriminating against people with disabilities. 29 U.S.C. § 794(b)(2)(B); *Mark H.*, 513 F.3d at 929; *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1020 (9th Cir. 2002). Section 504 provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4. If an organization that receives federal funds violates Rehabilitation Act § 504 intentionally or with deliberate indifference, it may be liable for compensatory damages. *See Mark H.*, 513 F.3d at 930, 938.

### A.   Meaningful Access/Reasonable Accommodation

**[2]** An organization that receives federal funds violates § 504 if it denies a qualified individual with a disability a rea-

sonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services. *See Alexander v. Choate*, 469 U.S. 287, 301-02 & n.21 (1985); *Mark H.*, 513 F.3d at 937; *Bird*, 303 F.3d at 1020, 1022.[7] Michelle and Natalie's ages and disabilities render them qualified individuals as defined by 34 C.F.R. § 104.3(j), (*l*)(2), (m). Section 504 applies to Hawaii DOE because it is a public school system. *See* 29 U.S.C. § 794(b)(2)(B); 20 U.S.C. § 7801(26)(A). Thus, Hawaii DOE is liable for damages for violating § 504 if it failed to provide Natalie or Michelle a reasonable accommodation that they needed to enjoy meaningful access to the benefits of a public education, and did so with deliberate indifference. *See Mark H.*, 513 F.3d at 937-38; *see also* 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

## 1. Reasonable Accommodation

Hawaii DOE violated the Rehabilitation Act § 504 by denying Michelle and Natalie reasonable accommodation if: (1) the girls needed autism-specific services to enjoy meaningful access to the benefits of a public education, (2) Hawaii was on notice that the girls needed those autism-specific services, but did not provide those services, and (3) autism-specific services were available as a reasonable accommodation. *See, e.g.*, *Duvall v. County of Kitsap*, 260 F.3d 1124, 1136-38 (9th Cir. 2001) (holding that there were genuine issues of fact regarding reasonable accommodation where there was some evidence that a hearing impaired plaintiff needed videotext display to follow court proceedings and that defendants denied plaintiff's request for videotext display without adequately investigating whether videotext display was available as a reasonable accommodation).

Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its pro-

---

[7]Punitive damages are not available as a remedy for violations of Rehabilitation Act § 504. *Mark H.*, 513 F.3d at 930.

grams. *See Choate*, 469 U.S. at 300-01; *Mark H.*, 513 F.3d at 937. Reasonableness "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]" *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (internal citation and quotation marks omitted). An accommodation is reasonable if it is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).

"[M]ere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; [the Rehabilitation Act] create[s] a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary." *Duvall,* 260 F.3d at 1136 (internal quotation marks omitted).

Here, the H. Family alleged that because of their disabilities, neither Michelle nor Natalie could enjoy meaningful access to the benefits of a public education without autism-specific services. The H. Family also alleged that, from 1994 to 1999, Hawaii DOE was on notice that the girls needed the services, but failed to provide them. The H. Family further alleged that those autism-specific services were available as a reasonable accommodation. There is evidence supporting each of these allegations.

**[3]** First, evidence supports the allegation that because of their autism, Michelle and Natalie could not access the benefits of a public education without receiving autism-specific services. For example, an administrative hearing officer found that from 1994 to 1998, Michelle and Natalie did not receive "such [special education] services as are necessary to permit [them] to benefit" from their education. Additionally, Dr. LeGoff reported that to benefit from their education, the girls needed autism-specific services such as Discrete Trial Train-

ing and the full-time assistance of a specially trained thera-
peutic aide.

**[4]** Second, evidence supports the allegation that from
1994 to 1999, Hawaii DOE was on notice that the girls
needed the autism-specific services, but failed to provide
those services. For example, in 1994 a Hawaii Department of
Health psychologist reported to Hawaii DOE that Michelle
was autistic and needed to be provided with numerous autism-
specific services. By 1995, Hawaii DOE knew that Natalie
had also been diagnosed as autistic. These facts could give
rise to an inference that Hawaii DOE also knew that Natalie
needed autism-specific services.

**[5]** Additionally, expert and percipient witnesses testified
that Hawaii DOE did not provide Michelle and Natalie with
those autism-specific services. The administrative hearing
officer likewise found that Hawaii DOE did not provide any
autism-specific services to the girls from 1994 to 1999.

**[6]** Finally, evidence supports the allegation that such
autism-specific services were available as a reasonable
accommodation. For example, Dr. LeGoff testified that
Hawaii DOE provided such services to other students with
autism. Additionally, Hawaii DOE employee Pauline Koku-
bun testified that other autistic children in the school system
were receiving autism-specific services at the same time that
Michelle and Natalie were not receiving such services.

**[7]** In sum, the H. Family made specific allegations that:
(1) the girls' disability made it impossible for them to enjoy
meaningful access to the benefits of a public education with-
out autism-specific services; (2) Hawaii DOE was on notice
that the girls needed those services, but failed to provide
them; and (3) those services were available as a reasonable
accommodation. Evidence supports each of these allegations.
Accordingly, the H. Family raised genuine issues of material
fact as to whether Hawaii DOE denied the girls meaningful

access to the benefits of a public education by denying them reasonable accommodation.

## 2. Deliberate Indifference

**[8]** Hawaii DOE acted with deliberate indifference if it (1) "[had] knowledge that a harm to a federally protected right is substantially likely," and (2) "fail[ed] to act upon that likelihood." *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002). Hawaii DOE had knowledge that a harm to a federally protected right was substantially likely if Hawaii DOE knew that Michelle and Natalie needed accommodation of autism-specific services. *See id.* Hawaii DOE failed to act upon that likelihood if it failed to adequately investigate whether those autism-specific services were a reasonable accommodation. *See id.*; *Duvall*, 260 F.3d at 1139-40. Thus, Hawaii DOE acted with deliberate indifference if it knew that Michelle and Natalie needed autism-specific services in order to enjoy meaningful access to the benefits of a public education and failed to investigate whether those services were available as a reasonable accommodation.

The H. Family has presented evidence that raises genuine issues of material fact as to whether Hawaii DOE knew that Michelle and Natalie needed autism-specific services to access the benefits of a public education, and as to whether Hawaii DOE failed to adequately investigate whether those services were available as a reasonable accommodation.

**[9]** First, as discussed above, the H. Family has supported their allegation that from 1994 to 1999, Hawaii DOE knew that Michelle and Natalie needed autism-specific services in order to access the benefits of a public education.

**[10]** Second, the evidence presented supports the allegation that although Hawaii DOE was aware that Michelle and Natalie needed these accommodations, Hawaii DOE failed to adequately investigate whether such accommodations were

available. For example, there is evidence that Hawaii DOE was providing such autism-specific services to other autistic children during this same time period. If a jury concludes that Hawaii DOE was providing autism-specific services to other students, and that Hawaii DOE was on notice that Michelle and Natalie needed such services, those conclusions could easily support the inference that Hawaii DOE did not adequately investigate whether it could provide autism-specific services to Michelle and Natalie.

[11] Accordingly, the H. Family raised a genuine issue of material fact as to whether Hawaii DOE acted with deliberate indifference.

### 3.   Hawaii DOE's Arguments

#### a.   *Meaningful Access*

Hawaii DOE argues that the H. Family cannot show that it denied Michelle and Natalie meaningful access by showing that Hawaii DOE failed to provide reasonable accommodation. Hawaii DOE supports this argument in part by pointing to 34 C.F.R. § 104.33, a regulation implementing Rehabilitation Act § 504. Regulation § 104.33 requires public schools to design programs for students with disabilities to meet their "individual educational needs . . . as adequately as the needs of non[-disabled] persons are met." 34 C.F.R. § 104.33(b)(1)(i). This regulatory requirement, Hawaii DOE argues, is the only way in which a school district may deny a student meaningful access. That one regulation identifies a specific requirement for compliance with the Rehabilitation Act § 504, however, does not negate the broader rule that a federally funded entity violates the Rehabilitation Act § 504 if it denies a qualified disabled person the reasonable accommodation that the person needs in order to enjoy meaningful access to a program or service.

Hawaii DOE also argues that the H. Family cannot rely on reasonable accommodation cases from other contexts, such as

college or graduate school, to determine what constitutes a reasonable accommodation in preschool or elementary school. Although it might be improper to rely on specific examples of what amounts to reasonable accommodation from a different context, there is nothing improper in extrapolating the reasonable accommodation standard, or how that standard is applied, from a different context. *See, e.g.*, *Mark H.*, 513 F.3d at 937-38 (drawing on cases from other contexts to outline the meaningful access and reasonable accommodation standards).

Finally, with respect to meaningful access, Hawaii DOE argues that the H. Family cannot rely solely on the fact that Hawaii DOE violated Michelle and Natalie's rights to a FAPE under IDEA to establish liability under Rehabilitation Act § 504. This is an accurate statement of law, but it is irrelevant to this case because the H. Family does not merely rely on Hawaii DOE's IDEA violations. Instead, as outlined above, the H. Family has alleged that Hawaii DOE failed to provide Michelle and Natalie with the reasonable accommodation that would have allowed the girls to enjoy meaningful access to the benefits of a public education.

### b.   *Deliberate Indifference*

**[12]** Hawaii DOE also argues that the H. Family failed to raise a genuine issue of material fact with respect to deliberate indifference. Hawaii DOE advances two theories in support of this argument: (1) that the H. Family relied solely on the fact that Hawaii DOE violated IDEA to show that Hawaii DOE acted with deliberate indifference, and (2) that Hawaii DOE was merely negligent, not deliberately indifferent, to Michelle and Natalie's federally protected rights. These arguments fail. First, the H. Family has done more than argue that Hawaii DOE violated IDEA. Second, Hawaii DOE's assertion that it was merely negligent, rather than deliberately indifferent, only highlights that there is a dispute of fact; it does not resolve the question in Hawaii DOE's favor.

### 4. Summary Judgment Was Improper

**[13]** In sum, the H. Family introduced evidence creating material issues of fact as to whether Hawaii DOE denied Michelle and Natalie meaningful access to the benefits of a public education by failing to provide them with reasonable accommodation and did so with deliberate indifference. Accordingly, summary judgment on the H. Family's § 504 meaningful access/reasonable accommodation claim was improper.

## B.   Regulation § 104.33

The H. Family also advanced a Rehabilitation Act § 504 claim for damages against Hawaii DOE based on Hawaii DOE's alleged violation of 34 C.F.R. § 104.33(b)(1)(i).[8] The H. Family can prevail on this claim by establishing that: Hawaii DOE violated Regulation § 104.33(b)(1)(i), that violation denied Michelle and Natalie meaningful access to the benefit of a public education, and Hawaii DOE acted with deliberate indifference. *See Mark H.*, 513 F.3d at 937-39.

### 1.   Violation of 34 C.F.R. § 104.33(b)(1)(i)

**[14]** 34 C.F.R. § 104.33(a) requires that Hawaii DOE "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." Regulation § 104.33(b)(1)(i) explains that in order to provide a free appropriate public education, Hawaii DOE must design the "regular or special education and related aids and services" provided to students with disabilities "to meet [the] individual educational needs of [those students] as adequately as the needs of non[-disabled] persons are met." 34 C.F.R. § 104.33(b)(1)(i).

---

[8]The United States Department of Education developed regulations to implement the Rehabilitation Act. *Mark H.*, 513 F.3d at 929. Regulation § 104.33 is one of those regulations. *See* 34 C.F.R. § 104.33.

The H. Family alleged that Hawaii DOE violated 34 C.F.R § 104.33(b)(1)(i) because the design of Michelle and Natalie's IEPs was so inadequate that Michelle and Natalie were unable to access *any* of the benefits of a public education. Presumably, at a minimum, Hawaii DOE's education programs for its non-disabled students allow those students to access at least some benefits of a public education. Thus, the H. Family alleged, Hawaii DOE did not design Michelle and Natalie's IEPs to meet their needs as adequately as the needs of other students are met.

As discussed in detail above, the evidence presented raises a genuine issue of material fact as to whether Michelle and Natalie needed autism-specific services in order to access the benefits of public education. The evidence also supports the allegation that the IEPs that Hawaii DOE provided Michelle and Natalie were not designed to provide those autism-specific services. For example, the administrative hearing officer found that, before 1999, the girls' IEPs did not include autism-specific services. Additionally, Dr. LeGoff reported that Hawaii DOE initially refused to include the autism-specific services that he recommended in the girls' IEPs.

**[15]** Accordingly, the H. Family raised genuine issues of material fact as to whether Hawaii DOE failed to design Michelle's and Natalie's IEPs to include the autism-specific services necessary to meet Michelle's and Natalie's educational needs as adequately as the needs of non-disabled students were met. This raises a plausible § 104.33(b)(1)(i) claim.

### 2. Meaningful Access

In *Mark H.*, this court observed that "a disabled individual may be denied 'meaningful access' to public education when that education is not designed to meet her needs as adequately as the needs of other students are met." *Mark H.*, 513 F.3d at 938 n.14. Here, if, as the H. Family alleged, Hawaii DOE vio-

lated § 104.33(b)(1)(i) by failing to design Michelle's and Natalie's IEPs so as to provide the girls any access to the benefits of a public education, such a violation would also likely establish the denial of meaningful access. Consequently, the H. Family raised genuine issues of material fact as to whether Hawaii DOE violated Regulation § 104.33(b)(1)(i) in such a way that the violation denied Michelle and Natalie meaningful access to the benefits of a public education.

### 3.   Deliberate Indifference

The H. Family can establish that Hawaii DOE acted with deliberate indifference by showing that: (1) Hawaii DOE knew that its actions would likely result in a violation of Michelle and Natalie's federally protected right to have education programs that were designed to meet their needs as adequately as the needs of other students are met and (2) Hawaii DOE failed to act upon that likelihood. *See Lovell*, 303 F.3d at 1056.

Hawaii DOE knew that it was obligated by 34 C.F.R. § 104.33(b)(1)(i) to design Michelle and Natalie's IEPs to meet their needs as adequately as the as the needs of other students are met. The H. Family alleged that in order for Michelle and Natalie's IEPs to be designed to meet their needs as adequately as the needs of other students are met, Hawaii DOE needed to design Michelle and Natalie's IEPs to include autism-specific services. The H. Family further alleged that Hawaii DOE did not design Michelle and Natalie's IEPs to include autism-specific services. As outlined above, evidence supports these allegations.

Thus, the H. Family raised genuine issues of material fact as to whether Hawaii DOE knew that its failure to design Michelle and Natalie's IEPs to include autism-specific services was likely to result in a violation of Michelle and Natalie's federally protected rights, and failed to act upon that likelihood. Accordingly, the H. Family raised genuine issues

of material fact as to whether Hawaii DOE violated 34 C.F.R. § 104.33(b)(1)(i) with deliberate indifference.

### 4. Summary Judgment Was Improper

**[16]** In sum, the H. Family introduced evidence raising genuine issues of material fact as to whether: (1) Hawaii DOE violated § 104.33(b)(1)(i) such that it denied Michelle and Natalie meaningful access to the benefits of a public education; and (2) Hawaii DOE acted with deliberate indifference. Thus, the district court erred in granting Hawaii DOE's motion for summary judgment on the H. Family's meaningful access/Regulation § 104.33(b)(1)(i) claim.

### C. Reassignment

Judge Real has presided over this case twice now, even though the case was originally assigned to him through his temporary assignment to the District of Hawaii. Accordingly, we direct the Clerk of the United States District Court for Hawaii to reassign this case to a different judge. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040-41 (9th Cir. 2008) (holding that reassignment is appropriate in unusual circumstances).

## IV.   CONCLUSION

For all the above-outlined reasons, the district court erred when it granted Hawaii DOE's motion for summary judgment on the H. Family's claims that Hawaii DOE violated Rehabilitation Act § 504 by: (1) failing to provide the girls with the reasonable accommodation of autism-specific special education services, and (2) failing to design the girls' IEPs to meet the girls' needs as adequately as the needs of non-disabled students are met as required by 34 C.F.R. § 104.33(b)(1)(i). Accordingly, we reverse the district court's grant of summary judgment on those claims, and remand for further proceedings consistent with this opinion.

**[17]** Because of the unusual circumstances in this case, we direct the Clerk of the United States District Court for Hawaii to reassign this case to a different judge.

**REVERSED, REMANDED, AND REASSIGNED.**