KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
I agree that R.K.’s request for injunctive relief is moot, in light of his family’s relocation to a new part of Scott County, the decision of the Board of Education of Scott County (“the School Board”) to assign R.K to his new neighborhood school ever since, and Kentucky’s recent enactment of a law requiring that diabetic children be educated in the public school to which they would otherwise have been assigned. I dissent from the majority’s holding that R.K. cannot recover compensatory damages as a matter of law, however, because R.K. has proffered facts from which a jury could infer that the School Board was aware that a nurse was not required to assist R.K. and that an adult could easily be trained to-provide the necessary assistance. I would therefore reach the merits of R.K’s argument that the School Board discriminated against R.K. by denying him a generally available benefit — assignment to one’s neighborhood school — based solely *926 upon a concern regarding the availability of a nurse to supervise his diabetes treatment at his neighborhood school.
As the majority recognizes, compensatory damages under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act are available only upon a showing of intentional discrimination, which most courts have held requires a finding that the public entity acted with deliberate indifference. See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 260-63 (3d Cir.2013); Maj. Op. at 925 (noting that the parties agree that the deliberate-indifference standard applies to this case). The deliberate — indifference standard “requir[es] both (1) ‘knowledge that a harm to a federally protected right is substantially likely,’ and (2) ‘a failure to act upon that likelihood.’” S.H., 729 F.3d at 263 (quoting Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir.2001)). The majority rests on the first prong, holding that R.K. failed to submit evidence to show “that the school board knew that it would likely violate his rights when it assigned him to a school with a full-time nurse.” Maj. Op. at 925. I disagree.
The requisite knowledge' is shown “[w]hen the plaintiff has alerted the public entity to his need for accommodation.” Duvall 260 F.3d at 1139. Accordingly, it is enough that a plaintiff has given the public entity the information necessary to understand the need for and reasonableness of the requested accommodation. See, e.g., id. at 1040 (hearing-impaired litigant informed county-court staff of his need for “videotext display” for court hearings and of the inadequacy of preexisting accommodations for the hearing impaired); S.H., 729 F.3d at 265 (plaintiff alleging wrongful diagnosis and placement in special education was required to prove “knowledge that a federally protected right is substantially likely to be violated (i.e., knowledge that S.H. was likely not disabled and therefore should not have been in special education)”); Mark H v. Hamamoto, 620 F.3d 1090, 1099 (9th Cir. 2010) (holding, in a case alleging that the Hawaii Department of Education failed to accommodate the needs of autistic children, that “Hawaii DOE had knowledge that a harm to a federally protected right was substantially likely if Hawaii DOE knew that Michelle and Natalie needed accommodation of autism-specific services”); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 276-77 (2d Cir.2009) (hospital had appropriate level of knowledge of patient’s need for an American Sign Language interpreter where the patient and family members alleged making “attempts to secure an interpreter prior to surgery” and afterward).
R.K. has provided sufficient evidence from which a jury could find that the School Board acted with this level of knowledge. R.K.’s parents repeatedly requested that the School Board train a non-nurse at Eastern Elementary to assist R.K. in counting carbohydrates and administering insulin. See R. 82-2 (J.K. Aff. ¶¶ 5-7, 13-16, 18, 20) (Page ID #588-92). The record further contains evidence from which a jury could find that the School Board was aware that a nurse was not required to assist R.K. See id. ¶ 13 (Page ID #590) (stating that the County’s Director of Child and Family Health Services — who was present at the July 2009 meeting with R.K’s parents and School Board officials — indicated that “an insulin pump, unlike injections, does not require a nurse’s presence”); R. 84-13 (Sept. 18, 2009 Diabetes Medical Management Plan at 3) (Page ID # 1189) (form filled out by R.K’s doctor, which stated “[t]he student must be supervised by an adult with dose administration via pump”); R. 84-20 (July 28, 2010 Diabetes Medical Management *927 Plan at 4-5) (Page ID # 1214-15) (form filled out by R.K’s doctor, stating that “any trained layperson can supervise or help put into pump,” that “[R.K] is independent in manipulating his pump,” and that R.K “[d]oes not require nurse”).[1] Finally, the record contains evidence from which a jury could conclude that the School Board was aware of the ease with which a non-nurse could be trained to assist someone in R.K’s position. See R. 82-2 (J.K. Aff-¶¶ 10, 14) (Page ID # 589, 591). Because a jury finding that R.K. requested an accommodation and that the School Board knew that the accommodation was needed and could be provided is all that is needed to establish the knowledge necessary for a finding of deliberate indifference, I dissent from the majority’s conclusion that R.K. is not entitled to compensatory damages as a matter of law.

, Additionally, albeit in testimony that was often conflicting, Tony Harrison, the School Board’s Director of Nursing, admitted that having someone who was “trained” to assist R.K. would have been acceptable and later said that having a nurse was better, but not required. See R. 82-4 (Harrison Dep. at 22:7-26:21, 35:1-18, 42:18-43:1, 48:16-19, 49:2-4, 50:3-15, 70:10-13) (Page ID # 653-57, 666, 673-74, 679-81, 701).