**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CYRUS CSUTORAS,
            *Plaintiff-Appellant*,

v.

PARADISE HIGH SCHOOL; PARADISE
UNIFIED SCHOOL DISTRICT,
            *Defendants-Appellees.*

No. 19-17373

D.C. No.
2:16-cv-02210-
KJM-DMC

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted June 15, 2021
San Francisco, California

Filed September 7, 2021

Before: Mary M. Schroeder, Milan D. Smith, Jr., and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke

# SUMMARY[*]

## Americans with Disabilities Act / Rehabilitation Act

The panel affirmed the district court's grant of summary judgment in favor of Paradise High School and Paradise Unified School District in an action brought under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act by Cyrus Csutoras.

Csutoras, a student with attention deficit disorder, sought damages after he was assaulted and seriously injured by another student at a high school football game.

The panel held that guidance issued by the Department of Education in Dear Colleague Letters was not binding, and the school's failure to adopt all of the Letters' suggestions did not amount to disability discrimination. The panel held that to assert a cognizable claim for damages under the ADA or the Rehabilitation Act, Csutoras was required to establish intentional discrimination or deliberate indifference by defendants. The panel held that Csutoras did not meet the high bar of deliberate indifference because the Dear Colleague Letters did not make his need for social accommodations "obvious," such that failure to enact the Letters' recommendations constituted a denial of a reasonable accommodation with deliberate indifference. Further, no request for a social-related accommodation was ever made, and no prior incidents of bullying or harassment

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

involving Csoturas were observed or reported to the school prior to the assault during the football game.

## COUNSEL

Russell Clive Handy (argued), Potter Handy LLP, San Diego, California; JD Zink, Zink & Lenzi Attorneys at Law, Chico, California; Scottlynn J. Hubbard, Hubbard APC, Chico, California; for Plaintiff-Appellant.

William D. Ayres (argued), Ayres Law Office, Redding, California, for Defendants-Appellees.

## OPINION

VANDYKE, Circuit Judge:

After getting assaulted and seriously injured by another student at a high school football game, Cyrus Csutoras (who suffered from attention deficit disorder) sued his school for money damages, asserting claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794. But Csutoras does not argue the school violated any binding statutory or regulatory provision. Instead, he argues that guidance issued by the Department of Education (DOE) in various Dear Colleague Letters should be binding, and that the school's failure to adopt all of the Letters' suggestions for preventing harassment of disabled students amounts to disability discrimination.

Csutoras attempts to use the Dear Colleague Letters at issue in this case to leapfrog over the statutory requirements to assert a cognizable claim under the ADA or the Rehabilitation Act. But the agency guidance represented in the particular Dear Colleague Letters here can't relieve Csutoras of the legal elements he must satisfy, particularly *intentional* discrimination or *deliberate* indifference. The Dear Colleague Letters don't (nor does it seem they were intended to) adjust the legal framework governing private party lawsuits brought under the ADA or Rehabilitation Act. Accordingly, Csutoras's claims—which rely entirely on the enforceability of the Dear Colleague Letters as distinct legal obligations—fail. We therefore affirm the district court's grant of summary judgment to Paradise High School and Paradise Unified School District (collectively, the "school").

## BACKGROUND

Csutoras transferred to Paradise High School during his freshman year. Because of his attention deficit disorder, he requested, and the school granted, two accommodations pursuant to a Section 504 plan. The accommodations allowed him (1) extra time to complete work when necessary, and (2) assisted review of his notes to help keep him organized. Both Csutoras and his mother signed off on the proposed plan and denied the need for any further accommodations. Csutoras's agreed-upon educational plan was entirely academic in nature; he never requested any other accommodations from the school—including any social accommodations related to harassment or bullying.

On August 28, 2015, Csutoras was talking with a female classmate (Faith) at a high school football game when a male classmate (Justin) suddenly approached and assaulted Csutoras, punching him several times in the face. Csutoras was seriously injured by the assault. The school had four

adults supervising the game, but none of them observed or stopped the incident. Both parties agree that Justin's motivation for the assault was not connected in any way to Csutoras's attention deficit or his blood clotting disorder.[1] In fact, Justin later admitted the attack was motivated by jealousy, and the investigation after the incident confirmed the same, characterizing the assault as motivated by jealously over Csutoras's relationship with Faith. In other words, the parties agree the assault that motivated this lawsuit was unmotivated in any way by Csutoras's disability (either his attention deficit or blood clotting disorder).[2]

Prior to the football game, the school was unaware of any harassment or bullying involving Csutoras. Csutoras's mother was likewise unaware. After the assault, an investigation revealed that Justin "had hit [Csutoras] on the shoulder during school [lunch]" a few days before the football game and that Justin learned after hitting Csutoras's shoulder that Csutoras suffered from a blood clotting disorder. But the lunch incident was not observed by any school representative and was never reported to the school by Csutoras or anyone else before the football game. So the parties agree on this important fact: the school was unaware

---

[1] The parties dispute both whether Csutoras has a blood-clotting disorder, and whether it constitutes part of his qualifying disability or the school was aware of it. The only disability identified on Csutoras's 504 plan, and in his Complaint, was attention deficit disorder and no accommodations were sought in connection with his blood clotting disorder. But viewing the evidence in the light most favorable to Csutoras, we will assume that Csutoras's blood-clotting disorder was part of his disability.

[2] Csutoras's counsel conceded the same at oral argument.

of any harassment or bullying of Csutoras prior to the football game where he was assaulted.

Csutoras filed suit against the school and sought monetary damages, arguing the school violated the ADA and Rehabilitation Act by failing to satisfy various Dear Colleague Letters issued by the DOE's Office for Civil Rights (OCR) and Office of Special Education and Rehabilitative Services (OSERS) between 2000 and 2014.[3]

On cross motions for summary judgment, the district court denied Csutoras's motion for partial summary judgment on liability and granted summary judgment to the school, determining that the Dear Colleague Letters were not

---

[3] *See generally* U.S. Dep't of Educ., Office for Civil Rights and Office of Special Educ. and Rehab. Servs., Dear Colleague Letter: Prohibited Disability Harassment, July 25, 2000, https://www2.ed.gov/print/about/offices/list/ocr/docs/disabharassltr.html ("2000 Letter"); U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter: Harassment and Bullying, Oct. 26, 2010, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf ("2010 Letter"); U.S. Dep't of Educ., Office of Special Educ. and Rehab. Servs., Dear Colleague Letter: Bullying of Students with Disabilities, Aug. 20, 2013, https://www2.ed.gov/policy/speced/guid/idea/memosdcltrs/bullyingdcl-8-20-13.pdf ("2013 Letter"), https://www2.ed.gov/policy/speced/guid/idea/memosdcltrs/bullyingdcl-enclosure-8-20-13.pdf ("2013 Letter Enclosure"); U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter: Responding to Bullying of Students with Disabilities, Oct. 21, 2014, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-bullying-201410.pdf ("2014 Letter") (collectively, the "Dear Colleague Letters" or "Letters").

Csutoras only cited and relied on the 2013 and 2014 Letters in his motion for partial summary judgment before the district court. On appeal, Csutoras appears to rely on all four Letters and we agreed to take judicial notice of them as they were made public through a government entity and no party disputed their accuracy or authenticity.

binding and that Csutoras was unable to show the school violated any part of the existing regulatory scheme. Csutoras appeals this decision, and we have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"We review *de novo* the district court's decision on cross motions for summary judgment. We consider, viewing the evidence in the light most favorable to the nonmoving party, whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (citations omitted).

## DISCUSSION

### A. Csutoras's Claims Fail As The Dear Colleague Letters Are Not Binding.

Anticipating that he would be left without recourse against the school absent enforcement of the Dear Colleague Letters as binding law, Csutoras proposes two novel legal theories. We reject both theories, as they lack any support from the statutory text, binding regulations, or our caselaw.[4]

---

[4] Csutoras centers his claim entirely on the enforceability of the Dear Colleague Letters, and notably concedes that "if the Dear Colleague Letter's guidance isn't taken into account in assessing Defendants' actions, and more importantly their failures to act, Csutoras probably loses."

### 1. Csutoras's Proposed Theories Conflict with Binding Precedent.

First, Csutoras urges us to adopt a four-factor test, set out in the 2014 Letter, as establishing whether certain conduct gives rise to a disability-based harassment violation under the ADA and Rehabilitation Act.[5]    Under the OCR's proposed test, it may seek enforcement against a claimed violation when: "(1) a student is bullied based on a disability; (2) the bullying is sufficiently serious to create a hostile environment; (3) school officials *knew or should know* about the bullying; and (4) the school does not respond appropriately."   2014 Letter at 4 (emphasis added).   But

---

[5] Csutoras cites to footnote 18 of the 2013 Letter as the source for this proposed test and claims that the 2013 Letter cites to *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), as the original source. But the 2013 Letter does not have a footnote 18 nor does it discuss this test.  We assume Csutoras is relying on the 2014 Letter, where a four-factor test is discussed.  But the 2014 Letter cites *Davis* in support of a different legal standard applicable to "private lawsuits for money damages" like this one—where courts have required actual knowledge and deliberate indifference.  2014 Letter at 4 n.18.  In fact, *Davis* explicitly rejected the third factor of the test Csutoras urges: whether "school officials know or should know about the bullying."  *Davis*, 526 U.S. at 642 (explaining the Court previously "declined the invitation to impose liability under what amounted to a negligence standard— holding the district liable for its failure to react to . . . harassment of which it knew or *should have* known," instead imposing damages only if the school intentionally acted with deliberate indifference to "harassment of which it had actual knowledge").  So under the *Davis* framework—which is properly applied in private party lawsuits like this case alleging peer-on-peer harassment based on disability—Csutoras must show the school had actual knowledge of the harassment and was deliberately indifferent.  *See Davis*, 526 U.S. at 650 ("We thus conclude that funding recipients are properly held liable in damages only where they are deliberately indifferent to . . . harassment, of which they have actual knowledge . . . .").

Csutoras's proposal to apply this test in private lawsuits like his is foreclosed by our precedent, which sets a much higher bar for plaintiffs seeking damages under the ADA or Rehabilitation Act by requiring they "prove that the defendant intended to discriminate on the basis of his or her disability, or was deliberately indifferent to the disability." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 466 (9th Cir. 2015) (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

The proposal is also foreclosed by the Letters themselves, which acknowledge the four-factor test is limited to administrative enforcement actions and suits for injunctive relief—distinguishing it from the actual knowledge and deliberate indifference standard that governs private lawsuits for money damages (like the one Csutoras brings here).[6]  2014 Letter at 4 n.18.  Because the Letters explicitly disclaim governance of private actions for damages, Csutoras's first proposed theory is a non-starter.

Second, Csutoras asks us to hold that, collectively, the Dear Colleague Letters provide adequate, constructive notice to schools that all disabled students need social accommodations (even if never requested) to prevent bullying and harassment—thereby relieving him of his duty to establish actual knowledge and deliberate indifference.

---

[6] Csutoras's original complaint sought both monetary damages and injunctive relief but he made no effort to pursue injunctive relief before the district court and on appeal pursues only monetary damages. Csutoras does not dispute his suit is one for money damages.  Instead, when confronted with footnote 18 from the 2014 Letter—which clarifies its guidance is not applicable to suits like his for money damages—he insists it should be "the only statement in the 2014 letter *not* entitled to deference."

Csutoras's interpretation of the Dear Colleague Letters attempts to stretch them far afield from what they actually say and what our precedent allows. Essentially, Csutoras argues that any instance of peer-on-peer harassment or bullying directed towards a disabled student (regardless of the harasser's motivations or the school's precautions) should, at a minimum, create a colorable claim of disability discrimination against the school and a fact issue for the jury to resolve. But such an expansive interpretation is foreclosed by the law governing private suits for damages, which requires that plaintiffs meet the high bar of deliberate indifference—i.e., where "the school's response to the harassment or lack thereof was *clearly unreasonable* in light of the *known circumstances*." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020) (emphases added) (alterations and quotation marks omitted) (citing *Davis*, 526 U.S. at 648).

While the deliberate-indifference inquiry involves factual determinations, it "does not [as Csutoras suggests] 'transform every school disciplinary decision into a jury question.'" *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 997 (5th Cir. 2014) (quoting *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (internal quotations omitted)) (citing *Davis*, 526 U.S. at 648). Nor, as the Supreme Court explained in *Davis*, does it require schools to purge themselves of every instance of bullying or harassment to avoid liability. *See* 526 U.S. at 648 (emphasizing that the deliberate indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."). The Supreme Court has also made clear that in appropriate cases, a school's response to harassment or the precautions it puts in place to prevent harassment may be

reasonable as a matter of law. *See id.* at 649. And here—given that the record is devoid of any fact (including any request from Csutoras for a social-related accommodation) that would suggest he required surveillance or assistance beyond the limited adult supervision provided at the football game—the school's precautions were within the wide range of reasonableness afforded by our precedent and therefore reasonable as a matter of law. The school's response to Csutoras's harassment, which he does not challenge nor do we see any basis to second-guess, was also reasonable as it included a prompt and full investigation into the incident and suspension of the assailant.

As other courts have observed before, "[j]udges make poor vice principals," and thus need to be careful second-guessing a school's disciplinary decisions or restricting the flexibility that school administrators require and our laws afford. *Estate of Lance*, 743 F.3d at 996; *see also Karasek*, 956 F.3d at 1105; *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 912 (7th Cir. 2020) (citing *Davis*, 526 U.S. at 633, 648–49). The Letters themselves cannot satisfy Csutoras's obligation to demonstrate that the school had actual knowledge of prior harassment, which the school met with a clearly unreasonable response. Nor do we read the Letters as attempting such a feat, as they consistently recognize that a school's responsibilities toward any particular student are highly contextual and caution that "[t]here is no one-size-fits-all or simple solution" to the problem of bullying. 2013 Letter Enclosure at 1.

Enforcement of the guidance as Csutoras suggests would also likely be unworkable and highly problematic because it lacks any administrable standard for the trier-of-fact to determine liability or the regulated schools to gauge

compliance.[7]  And as our caselaw recognizes, no amount of supervision could completely neutralize the risk of peer-on-peer harassment or bullying—underscoring why the guidance provided in these Dear Colleague Letters is simply that: aspirational, non-binding guidance that cannot create or change the elements of a private cause of action.  *See Davis*, 526 U.S. at 648.

### 2.  The Dear Colleague Letters Do Not Create Legal Obligations.

Without any supporting cases, Csutoras asks us to chart a new course and enforce the Dear Colleague Letters as binding law.  But Csutoras points to no evidence, nor did we find any, that the Dear Colleague Letters were issued as the "authoritative" or "official position" of the Department of Education for purposes of private damages actions.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019).  For that reason, they lack any force of law for that purpose.  A holding otherwise would create an "unfair surprise" for regulated parties because the guidance would create new duties beyond those currently imposed.  *Id.* at 2417–18.

Moreover, the Letters *themselves* disclaim any binding authority and explicitly state that they don't apply to private suits for money damages—which is exactly what Csutoras has brought here.  2014 Letter at 4 n.18; 2010 Letter at 1 n.6.  The Letters expressly limit their application to administrative enforcement actions and lawsuits seeking

---

[7] Indeed, some of the practical concerns with enforcing vague agency guidance were demonstrated in oral argument when Csutoras's counsel was unable to answer exactly how many adults at the football game (beyond the four provided) would have satisfied the "best practice" of providing "active adult supervision" since the Letters suggest no set number or preferred ratio.

injunctive relief.**8**  And the Letters are chock-full of vague and aspirational words—"*encourag[ing]*" schools to "*consider*" some of the recommendations they "*can*" implement—that confirm the non-binding nature of their suggestions and undercut Csutoras's argument that they were meant to provide any binding regulatory standard for private enforcement.**9**

In sum, because the Dear Colleague Letters are not authoritative and do not apply in suits for money damages like the one Csutoras appeals here, they do not create a private regulatory scheme or alter the legal regime we are bound to apply.**10**

---

**8** 2014 Letter at 4 n.18. (acknowledging that the 2014 Letter outlines "the standard for administrative enforcement of Section 504 and in court cases where plaintiffs are seeking injunctive relief. It is *different* from the standard in *private lawsuits for money damages*, which, many courts have held requires proof of a school's actual knowledge and deliberate indifference.") (emphases added); *see also* 2010 Letter at 1 n.6 (clarifying the guidance applies only to administrative enforcement actions and cases where injunctive relief is sought).

**9** 2013 Letter Enclosure at 1 ("[t]here is no one-size-fits-all or simple solution" to the problem of bullying and "[w]e encourage you to carefully consider each of these practices"); 2000 Letter at 1 (recognizing its purpose to "develop greater awareness of this issue [of disability harassment], to remind interested persons of the legal and educational responsibilities that institutions have . . . , and to suggest measures that school officials should take to address this very serious problem.").

**10** In this case, we need not decide whether *all* Dear Colleague Letters, or similar documents, are or are not eligible for deference or can or cannot create legal obligations. The Supreme Court had granted *certiorari* to decide this question. *See Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 369 (2016); *see also* Petition for Writ of

**B. Csutoras's Claims Fail Under Our Binding Precedent.**

To establish a claim under the ADA or Rehabilitation Act, Csutoras "must show: (1) [he] is a qualified individual with a disability; (2) [he] was denied a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance" (for the Rehabilitation Act claim) or is a public entity (for the ADA claim). *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (cleaned up)).[11]   Although there is some dispute over the nature of Csutoras's disability, the parties agree the first and third elements have been satisfied at this stage, which centers our analysis on whether a reasonable accommodation was denied.   The reasonable accommodation element can be satisfied by showing the school wrongly denied an

---

Certiorari at i, *Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 369 (2016) (No. 16-273) ("[S]hould deference extend to an unpublished agency letter that, among other things, does not carry the force of law and was adopted in the context of the very dispute in which deference is sought?").  However, the Court later remanded the case without issuing a decision on the merits because of new guidance issued by the Department of Education and Department of Justice.  *See Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017).

[11] Because "there is no significant difference in the analysis of rights and obligations created by the [ADA and the Rehabilitation Act]," *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002)), we collectively address the claims under both statutes.  The few differences between the two—jurisdictional requirements, the causal standard for liability, the entity with regulatory responsibility, and the consistency across regulations, *id.* at 1098–99—are not implicated here.

accommodation request or failed to comply with a binding regulation. *A.G.*, 815 F.3d at 1204. Here, because the Dear Colleague Letters are not binding and the parties agree a social-related accommodation was never requested or denied, Csutoras cannot establish the second element of his ADA and Rehabilitation Act claims.

Further, as a private plaintiff seeking money damages, Csutoras must clear an additional hurdle: proving a "*mens rea* of intentional discrimination" in the failure to accommodate, which "may be met by showing deliberate indifference." *A.G.*, 815 F.3d at 1204 (quoting *Mark H.*, 513 F.3d at 938 (internal quotations omitted)). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood." *Duvall*, 260 F.3d at 1139; *see also Mark H.*, 620 F.3d at 1099.

To meet the high bar of deliberate indifference, a plaintiff must first show that the public entity was on notice of the need for an accommodation. *See Duvall*, 260 F.3d at 1139. Notice is usually provided "[w]hen the plaintiff has *alerted* the public entity to his need for accommodation (or where the need for accommodation is *obvious*, or *required* by statute or regulation)." *Id.* (emphases added). Here, the parties agree that Csutoras never requested any accommodation related to social interactions, bullying, or harassment. And because the Dear Colleague Letters that Csutoras relies on are not binding, the specific accommodations they suggest are not "required by statute or regulation." Accordingly, the sole remaining question is whether, as Csutoras urges, the Dear Colleague Letters (which note that students with disabilities are at a greater risk of being harassed or bullied) made his need for social accommodations "obvious"—such that failure to enact their

recommendations constituted a denial of a reasonable accommodation with deliberate indifference.

The answer is no, because this "obvious" determination cannot be made in a vacuum detached from the facts. And, despite Csutoras's urging to the contrary, the Dear Colleague Letters in this case cannot serve as a substitute for the factual basis required to show the accommodation need was obvious. *See, e.g.*, *A.G.*, 815 F.3d at 1208 (explaining "whether the need for accommodation was obvious is a separate *factual* inquiry" (emphasis added), considering an expert report from a behavioral psychologist regarding the student's behavior, an email from the student's teacher, and the parents' request for an aide as evidence of a factual dispute as to the obviousness of the need for accommodation). As the Letters emphasize, no one-size-fits-all approach to bullying or harassment is appropriate—notwithstanding Csutoras's urging that we unilaterally assume the need for and demand the provision of social accommodations for all disabled students, irrespective of their individual needs and circumstances.

None of the facts here support Csutoras's view that his need for social-related accommodations was "obvious." No request for a social-related accommodation was ever made (and both Csutoras and his mother denied that he needed any other accommodations after approving the academic accommodations in his 504 plan). No prior incidents of bullying or harassment involving Csutoras were observed by or reported to the school, other than the lunch incident, which was reported only after the assault during the football game. And there is no evidence or even allegation that the school ignored any widespread bullying or harassment of disabled students. The only "fact" Csutoras points to in support of his "obvious" argument is the existence of the

Dear Colleague Letters—which cannot and do not satisfy his burden to demonstrate the school had actual notice of his need for a reasonable accommodation related to a qualifying disability. *See Mark H.*, 620 F.3d at 1097.[12]

**CONCLUSION**

We reject Csutoras's invitation to make the agency guidance at issue binding. And without it, as the district court and even Csutoras recognized, his claims fail as a matter of law. Accordingly, summary judgment for Paradise High School and Paradise Unified School District was properly granted.

The judgment of the district court is **AFFIRMED.**

---

[12] Several other issues plague Csutoras's claims (including that there appears to be no evidence that he was harassed or bullied *because of* his disability). But we need not reach those alternative grounds to affirm summary judgment.