FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| A.G., a student, by and through parents William Grundemann and Rhonda Grundemann; WILLIAM GRUNDEMANN; and RHONDA GRUNDEMANN, individually, *Plaintiffs-Appellants/ Cross-Appellees*, | Nos. 13-16239 13-16707 D.C. No. 2:11-cv-01899-NVW |
| v. | |
| PARADISE VALLEY UNIFIED SCHOOL DISTRICT NO. 69; JAMES P. LEE, Dr./Superintendent; NANCY CASE; JULIE BACON; ANNE GREENBERG; MARK LANE; SUE M. SKIDMORE, Board Members; LAURA BISTROW, PVUSD Special Education Director; ELAINE JACOBS, Principal at Vista Verde Middle School; ROBERT KURKLAN, School Psychologist at Vista Verde Middle School; KAREN HUDSON, Teacher at Vista Verde Middle School; LORNA GREEN, Principal of Roadrunner School; DEBBIE HARPER, Interventionist at Roadrunner School; BARBARA SICKLES, Interventionist at Roadrunner School; JUDY CARLYLE, Paraprofessional at Roadrunner School; JENNIFER WILSON, Teacher at | OPINION |

Roadrunner School; CYNTHIA
GILMORE, Teacher at Roadrunner
School,

*Defendants-Appellees/*
*Cross-Appellants*.

Appeal from the United States District Court
For the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
September 16, 2015—San Francisco, California

Filed March 3, 2016

Before: Morgan Christen and Michelle T. Friedland,
Circuit Judges, and Ivan L.R. Lemelle, Senior District
Judge.[*]

Opinion by Judge Lemelle

---

[*] The Honorable Ivan L.R. Lemelle, Senior District Judge for the U.S.
District Court for the Eastern District of Louisiana, sitting by designation.

# SUMMARY**

## Disability Discrimination

The panel reversed the district court's summary judgment in favor of defendants on claims of discrimination under section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, reversed in part the district court's summary judgment on tort claims under Arizona state law, and vacated a costs order in an action brought by a student and her parents against a school district and related employees and principals.

Clarifying the standards for disability discrimination claims by disabled children based on access to educational services, the panel stated that the Individuals with Disabilities Education Act ("IDEA") focuses on making a free appropriate public education ("FAPE") available to disabled students through development of Individualized Education Programs ("IEPs"). The IDEA creates a cause of action for children and parents to pursue injunctive or other prospective relief through a civil action following an administrative due process hearing in order to compel compliance with the Act and proper implementation or modification of the child's IEP. Section 504 of the Rehabilitation Act is broader than the IDEA; it is concerned with discrimination in the provision of state services to all individuals with disabilities. The regulations adopted pursuant to section 504 require qualifying public schools to "provide a free appropriate public education to each qualified handicapped person." FAPE is defined

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

differently for purposes of section 504 than it is for the IDEA, and section 504's regulations gauge the adequacy of services provided to disabled individuals by comparing them to the level of services provided to individuals who are not disabled. Title II of the Americans with Disabilities Act ("ADA") was modeled after section 504 and sets forth similar requirements for establishing a valid claim.

A plaintiff bringing suit under section 504 or Title II of the ADA must show: (1) she is a qualified individual with a disability; (2) she was denied "a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services;" and (3) the program providing the benefit receives federal financial assistance. To prevail on a claim for damages, the plaintiff must also prove a *mens rea* of intentional discrimination.

The panel reversed the district court's summary judgment on a claim that defendants denied the student meaningful access to educational benefits by violating 34 C.F.R. §§ 104.33(b)(1) and 104.34(a). The panel held that the parents' consent to the student's placement did not waive this claim.

The panel reversed the district court's summary judgment on plaintiffs' reasonable accommodation claim under section 504 and Title II. The panel concluded that a triable factual dispute existed as to whether the services plaintiffs faulted the school district for failing to provide were actually reasonable, necessary, and available accommodations for the student. The district court also erred in dismissing plaintiffs' damages claim for failure to show that the school district was on notice of the need for accommodation.

The panel affirmed the district court's summary judgment on claims under Arizona state law for intentional and negligent infliction of emotional distress. The panel reversed the district court's summary judgment on claims for assault, battery, and false imprisonment.

The panel vacated the district court's order denying costs to defendants, and it remanded the case to the district court for further proceedings.

## COUNSEL

JoAnn Falgout, Law Office of JoAnn Falgout, P.L.C., Tempe, Arizona, and Richard J. Murphy, Law Office of Richard J. Murphy, P.L.C., Phoenix, Arizona, for Plaintiffs-Appellants/Cross-Appellees.

Erin H. Walz and R. Scott Currey, Udall Shumway PLC, Mesa, Arizona, for Defendants-Appellees/Cross-Appellants. Barrie L. Brejcha, Yea-Jin Angela Chang, Donna J. Williams, Jenny A. Austin, Angela C. Vigil, and Keith L. Wurster, Baker & McKenzie LLP, Palo Alto, California, for Amicus Curiae Council of Parent Attorneys and Advocates, Inc.

**OPINION**

LEMELLE, District Judge:

A.G., a student eligible for special education services, and her parents appeal the district court's order granting summary judgment on claims of discrimination under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, as well as on their tort claims under Arizona state law against Paradise Valley Unified School District and related employees and principals (together "defendants"). Defendants cross-appeal the district court's order vacating taxation of costs. The parties settled other claims, including claims under the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400–1491.

We reverse the district court's order granting summary judgment on plaintiffs' federal law claims, reverse in part the district court's order granting summary judgment on plaintiffs' state law claims, vacate the district court's order addressing costs, and remand for further proceedings.

This appeal implicates overlapping federal statutes addressing discrimination on the basis of disability. Specifically, we address the requirement that all children with disabilities receive a free appropriate public education ("FAPE"), and the distinct but overlapping features of FAPE set forth under the different statutory schemes. The related statutory schemes at issue here are the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400–1491; section 504 of the Rehabilitation Act of 1973 ("section 504"), 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12131–12134. The parties entered into a settlement agreement that narrowed the scope of plaintiffs' claims so only claims under the Rehabilitation Act and the ADA are at issue, but we review all three statutes to clarify the different definitions and standards for FAPE that must be applied on remand. We also discuss plaintiffs' state law tort claims.

## FACTS AND PROCEDURAL BACKGROUND

A.G. attended school in the Paradise Valley Unified School District at various times between 2002 and September of 2010. From August 17, 2009 through January 19, 2010, A.G. attended seventh grade at Vista Verde Middle School in the Uniquely Gifted Program for students with high IQs and one or more learning or behavioral disabilities. During that time, A.G. periodically demonstrated aggressive, disruptive, and noncompliant behavior. In November of 2009, A.G.'s Individualized Education Plan ("IEP") Team, which included herself and her parents, adopted an IEP setting forth various educational services that would be provided to A.G.[1] Unfortunately, in December of 2009, A.G.'s behavior began to deteriorate. By January of 2010, she refused to go to class, destroyed school property, threatened to harm herself, wrote graffiti on a bathroom wall, and was uncooperative with a school resource officer, eventually physically striking that officer. A.G. was suspended from Vista Verde following the last incident.

---

[1] IEPs are mandated by the IDEA and aim at ensuring that a qualifying student with a disability is provided a free appropriate public education as defined under that Act. *See* 20 U.S.C. §§ 1401(9)(D), 1414(d). We explain the relevance of these concepts in greater detail, *infra*.

In February 2010, A.G.'s IEP Team met and adopted an Addendum to A.G.'s IEP. Pursuant to the Addendum, A.G. was to be transferred to the Roadrunner School, a school primarily designed for children with emotional disturbances, where she was to participate in an assortment of counseling, behavior management, and special education programs. The IEP Addendum indicates that A.G.'s parents visited Roadrunner and agreed that it would be an appropriate placement for A.G., and that A.G.'s parents were informed that A.G. would not be restrained at Roadrunner unless she became a danger to herself or others.

A.G. demonstrated behavioral issues on her second day at Roadrunner. She resisted entering the school that day and had to be physically escorted onto the premises by staff members and led to the "Intervention Room." During that incident, A.G. kicked a paraprofessional in the face. Officer Lori Welsh, a city police officer who worked as off-duty security at the school, was summoned and she arrested A.G. for aggravated assault and criminal damage. Officer Welsh placed A.G. in handcuffs and detained her until her mother arrived to pick her up.

Later, on March 23, 2010, Officer Welsh was again summoned by one of A.G.'s teachers to escort A.G. to the Intervention Room. Officer Welsh attempted to handcuff A.G. for allegedly poking her in the eye, but A.G. resisted and eventually scratched Officer Welsh in the face and neck. Officer Welsh placed A.G. in an arm bar, applied handcuffs, and called for backup. A.G. was eventually arrested for aggravated assault, transported to the police precinct for booking, and placed in a juvenile detention room where she kicked the table and chair. After being transported to the Juvenile Court Center, A.G. was released to her parents. The

charges stemming from both incidents were later dismissed, and A.G. returned to the Roadrunner School. She was eventually moved to the Howard S. Gray School, a private psychiatric school, at district expense.

On June 16, 2011, A.G. and her parents filed an administrative due process complaint with the Arizona Department of Education alleging that A.G. was denied a FAPE by the school district and its named representatives and employees (the "school district defendants"). The administrative complaint sought remedies available under the IDEA. Plaintiffs also filed the present action in Arizona state court against the school district defendants, the City of Phoenix, and Officer Welsh. Defendants later removed the action to the United States District Court for the District of Arizona.

In their First Amended Complaint, plaintiffs alleged a denial of FAPE under the procedural provisions of the IDEA, Title II of the ADA, and section 504 of the Rehabilitation Act, as well as various state common law tort claims against the school district defendants. Plaintiffs' principal discrimination-based claims relate to the school district's alleged failure to provide adequate accommodations, including a Functional Behavior Assessment ("FBA"), a Behavior Intervention Plan ("BIP"), and a full-time aide, and to the school district's decision to change A.G.'s placement from Vista Verde to the Roadrunner School. Plaintiffs alleged that having further accommodations would have allowed A.G. to continue attending Vista Verde.

In April of 2012, plaintiffs and the school district defendants entered into a settlement agreement releasing plaintiffs' IDEA claims. Among other things, the settlement

released the school district defendants of all liability for administrative remedies available under the IDEA relating to the failure to provide A.G. with a FAPE under the terms of that Act.**²** The settlement agreement expressly reserved plaintiffs' ability to proceed on their other federal claims pending in district court. On April 23, 2013, the district court also approved a settlement agreement dismissing all claims against the City of Phoenix and Officer Welsh.

In May of 2013, the district court granted summary judgment in favor of the school district defendants on all remaining claims, dismissing plaintiffs' claims under section 504 of the Rehabilitation Act and Title II of the ADA, as well as plaintiffs' state tort law claims. After the district court entered its final judgment, the school district submitted a bill of costs to the clerk of court and plaintiffs filed objections thereto. The clerk issued a Judgment on Taxation of Costs in favor of the school district, but plaintiffs later filed a motion seeking review of that judgment pursuant to Federal Rule of Civil Procedure 54(d)(1) and sanctions for defendants' allegedly improper reimbursement request. The district court agreed with plaintiffs and vacated the clerk's assessment of costs. Plaintiffs timely appealed the order granting summary judgment and defendants timely cross-appealed the order vacating costs.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over plaintiffs' federal law claims and plaintiffs' Rule 54(d) motion concerning costs

---

**²** As will be discussed more fully, *infra*, the concept of FAPE is relevant to, but distinct as between, the various Acts under which plaintiffs asserted claims.

pursuant to 28 U.S.C. § 1331 and plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review de novo an order granting or denying a motion for summary judgment. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001). We may "affirm a summary judgment only if, viewing the evidence in the light most favorable to the party against whom it is granted," there is no genuine issue of material fact such that the prevailing party is entitled to judgment as a matter of law. *Hamamoto*, 620 F.3d at 1097 (citing *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1189 (9th Cir. 1989)). We draw all justifiable factual inferences in favor of the nonmoving party, and we reverse an order granting summary judgment if any rational trier of fact could resolve a material factual issue in favor of the nonmoving party. *Id.*

We review the district court's decision to grant or deny costs for abuse of discretion. *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 592 (9th Cir. 2000) (en banc).

## DISCUSSION

In the district court, the parties' briefing conflated the requirements for claims made under the IDEA, the ADA, and section 504 of the Rehabilitation Act. Because remand is necessary, we clarify the relevant standards for disability discrimination claims by disabled children based on access to educational services. We also briefly address plaintiffs' state law claims. The parties' dispute concerning costs is mooted

by the need to remand for further proceedings consistent with this opinion.

## I.  Federal Legislation Addressing Special Education for Disabled Children.

There are three primary and overlapping pieces of federal legislation applicable to plaintiffs' discrimination claims: The IDEA, 20 U.S.C. §§ 1400–1491; section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and Title II of the ADA, 42 U.S.C. §§ 12131–12134.

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education [or 'FAPE'] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Mark H. v. Lemahieu*, 513 F.3d 922, 928 (9th Cir. 2008) (quoting 20 U.S.C. § 1400(d)(1)(A)). The IDEA focuses on making a FAPE available to disabled students through development of Individualized Education Programs ("IEPs").[3] *Id.*; 20 U.S.C. § 1401(9) (defining FAPE in part as "special education and related services that . . . are provided in conformity with the individualized education program required under section 1414(d)"). States receiving federal financial assistance under the IDEA must have in place "policies and procedures" to properly develop IEPs for qualifying children. *Id.* The IDEA creates a cause of action for children and parents to pursue injunctive or other

---

[3]  The IDEA defines an IEP as "a written statement for each child with a disability," setting forth the child's present levels of academic achievement and functional performance and measurable academic and functional goals. 20 U.S.C. § 1414(d).

prospective relief through a civil action following an administrative due process hearing in order to compel compliance with the Act and proper implementation or modification of the child's IEP. *See* 20 U.S.C. § 1415(i)(2)(C)(iii); *Lemahieu*, 513 F.3d at 928–29.

Section 504 of the Rehabilitation Act is broader than the IDEA; it is concerned with discrimination in the provision of state services to all individuals with disabilities. *Lemahieu*, 513 F.3d at 929. It provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Like the IDEA, section 504 applies to public schools that receive federal financial assistance. 29 U.S.C. § 794(b)(2)(B); *see also Lemahieu*, 513 F.3d at 929. Section 504's provisions are not expressly affirmative in nature, but the Rehabilitation Act empowers federal agencies to devise regulations aimed at preventing prohibited discrimination. *See Lemahieu*, 513 F.3d at 929.

The regulations adopted pursuant to section 504 require qualifying public schools to "provide a free appropriate public education to each qualified handicapped person." 34 C.F.R. § 104.33(a); *Lemahieu*, 513 F.3d at 929.[4] "FAPE" is defined differently for purposes of section 504 than it is for the IDEA. Under those section 504 regulations, FAPE requires "regular or special education and related aids and services that (i) are designed to meet individual educational

---

[4]  The United States Department of Education adopted enabling regulations at 34 C.F.R. §§ 104.1–104.61. *See* 34 C.F.R. § 104.1.

needs of handicapped persons *as adequately as the needs of nonhandicapped persons are met* and (ii) are *based upon adherence to procedures* that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(b)(1) (emphasis added). Section 504's regulations gauge the adequacy of services provided to disabled individuals by comparing them to the level of services provided to individuals who are not disabled. One method of ensuring that the educational aids and services are "designed to meet individual education needs" as required under § 104.33(b)(1)(i) is to implement an IEP developed in accordance with the IDEA, 34 C.F.R. § 104.33(b)(2), but a showing that FAPE was denied under the IDEA does not necessarily establish a denial of FAPE under section 504. *Lemahieu*, 513 F.3d at 933 ("Plaintiffs who allege a violation of the [section 504] FAPE requirement . . . may not obtain damages simply by proving that the IDEA FAPE requirements were not met.").

Title II of the ADA was modeled after section 504 of the Rehabilitation Act. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although Title II is different from section 504 in several respects, *see K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013),[5] for purposes of

---

[5] For instance, section 504 imposes a stricter causal standard ("solely by reason of disability") than Title II's "motivating factor" standard. *See K.M. ex rel. Bright*, 725 F.3d at 1098. Because plaintiffs raise factual

this appeal the elements of a valid Title II claim do not differ in any material sense from those of a valid section 504 claim and the two may be addressed together.

We have held "that § 504 contains an implied private right of action for damages to enforce its provisions." *Lemahieu*, 513 F.3d at 935. A plaintiff bringing suit under section 504 or Title II of the ADA must show: (1) she is a qualified individual with a disability; (2) she was denied "a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services;" and (3) the program providing the benefit receives federal financial assistance. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). A plaintiff may satisfy prong two by showing that the federally funded program denied her services that she needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations. *Id.* at 1097–98. A plaintiff can also satisfy prong two by showing that the program denied her meaningful access to public education through another means, such as by violating a regulation that implements section 504's prohibitions. *Lemahieu*, 513 F.3d at 938–39; *see Alexander v. Choate*, 469 U.S. 287, 301 (1985) (interpreting section 504 to "requir[e] that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers").

Finally, to prevail on a claim for damages under section 504 and Title II, "plaintiffs must prove a *mens rea* of 'intentional discrimination' . . . [and] that standard may be met by showing 'deliberate indifference,' . . . not only by

issues that prevent summary judgment under either standard, the differences between them are not of consequence here.

showing 'discriminatory animus.'" *Lemahieu*, 513 F.3d at 938 (quoting *Duvall*, 260 F.3d at 1138). Under our case law, "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Duvall*, 260 F.3d at 1139. The plaintiff establishes the requisite knowledge (or notice) on behalf of the defendant when she shows that she "alerted the public entity to [her] need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation)." *Id.*

"Thus, a public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Lemahieu*, 513 F.3d at 938.

## II. The district court improperly dismissed A.G.'s meaningful access and reasonable accommodation arguments.

### A. Meaningful Access

We have held that a plaintiff may establish denial of "meaningful access" under section 504 and Title II by showing there was "a violation of one of the regulations implementing" section 504, if such violation denied the plaintiff meaningful access to a public benefit. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010). To support such a cause of action, the regulation must be an "implementing regulation" within the meaning of *Alexander v. Sandoval*, 532 U.S. 275 (2001). *See Mark H. v. Lemahieu*, 513 F.3d 922, 935 (9th Cir. 2008) ("According to *Sandoval*, regulations can only be enforced through the private right of action contained in a statute when they 'authoritatively

construe' the statute; regulations that go beyond a construction of the statute's prohibitions do not fall within the implied private right of action, even if valid." (quoting *Sandoval*, 532 U.S. at 284)).

On appeal, plaintiffs argue that defendants denied A.G. meaningful access to educational benefits by violating two of section 504's regulations: 34 C.F.R. § 104.33(b)(1) and 34 C.F.R. § 104.34(a). Section 104.33 requires a school district to provide "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons *as adequately as* the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of" cross-referenced regulations, including § 104.34 among others. 34 C.F.R. § 104.33(b)(1) (emphasis added). Plaintiffs claim that A.G.'s placement at Roadrunner denied her meaningful access because certain educational opportunities such as art, music, and gifted classes were not available at Roadrunner, and because she was inappropriately placed in the Intervention Room for a total of approximately sixty hours. They also claim that the school district defendants denied A.G. meaningful access to the curriculum at both Vista Verde and Roadrunner because they failed to provide her appropriate behavioral supports and services at the two schools, as reflected in her allegedly deficient IEPs. Therefore, plaintiffs argue, A.G.'s educational opportunities at Vista Verde and Roadrunner were not "as adequate[] as" those provided to her peers at Vista Verde. 34 C.F.R. § 104.33(b)(1)(i).

Section 104.34 mandates that a disabled student be placed in the least restrictive "regular educational environment[,]" and requires that school districts comply with various

evaluative procedures and justify any changes in placement. 34 C.F.R. § 104.34(a). Plaintiffs argue that the school district transferred her to Roadrunner school without complying with § 104.34's procedural requirements, and that this transfer prevented her from accessing certain educational opportunities.

The district court dismissed plaintiffs' meaningful access argument. In doing so, it appeared to reason that A.G.'s parents' consent to placement at Roadrunner waived the claim. The district court also ruled that A.G. was not "qualified" to participate in the art, music, and gifted education classes of which she claimed to be deprived, because "she had repeatedly refused to do so at Vista Verde." Finally, the court noted that A.G.'s parents participated in the IEP team meetings where they had an opportunity to raise concerns that Roadrunner's behavioral policies were inappropriate for students diagnosed with autism.

The district court's reliance on A.G.'s parents' consent was misplaced. We have previously held that claims challenging the placement of a disabled child are not barred simply because the parents of the child consent, or fail to object, to such placement. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 447 (9th Cir. 2010). The conclusion in *J.W.* arose from an IDEA claim rather than claims under section 504 or Title II, but we are persuaded that a claim that meaningful access has been improperly denied within the meaning of these latter statutes is not "precluded or waived based on a parent's consent to an IEP," *id.*, at least where the issue is one that requires specialized expertise a parent cannot be expected to have. *Cf. id.* (providing that parents' affirmative insistence on an intervention, such as mainstreaming, may be a relevant consideration in

meaningful access analysis). Given the complex presentation of A.G.'s behavioral challenges, the question whether Roadrunner was an appropriate placement for A.G. required specialized expertise. Because the district court relied on A.G.'s parents' consent to placement at Roadrunner in dismissing plaintiffs' meaningful access claim without evaluating whether A.G.'s educational needs were met as adequately as those of her non-disabled peers, its decision must be reversed and remanded.

That said, on remand the district court will need to evaluate in the first instance whether plaintiffs have a valid claim under these or other section 504 regulations. *See Lemahieu*, 513 F.3d at 939–40. It is unclear from the appellate record exactly which regulations plaintiffs allege were violated by defendants and which violations allegedly prevented A.G. from meaningfully accessing public education. Thus, on remand, the district court should evaluate (1) which claims for violation of section 504 regulations plaintiffs preserved; (2) whether those regulations "fall within the scope of the prohibition contained in § 504 itself," *Lemahieu*, 513 F.3d at 935 (citing *Sandoval*, 532 U.S. at 284); (3) whether the school district violated those regulations; and (4) whether the school district's violation of those regulations prevented A.G. from accessing her public education, *Hamamoto*, 620 F.3d at 1101.

## B. Reasonable Accommodation

A plaintiff may establish prohibited discrimination under section 504 and Title II by showing that a public entity denied her a "reasonable accommodation" necessary to achieve meaningful access to her education. To succeed on such a claim, a plaintiff must show that the "defendant failed to

make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the program or activity," 1 Americans with Disabilities: Practice and Compliance Manual § 1:247 (2015); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999), and that the accommodation would have enabled her to meet the "program's essential eligibility requirements." *E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013).

Relying on the report and deposition testimony of their behavioral psychologist expert, Dr. Jolenea B. Ferro, PhD., BCBA-D, plaintiffs argued below that A.G. needed further behavioral services, including a full time behavioral aide, to meaningfully access her education. They also assert that the school district's inquiry into these accommodations would have demonstrated that they were necessary, reasonable, and available and that they would have allowed A.G. to continue her education at Vista Verde rather than be transferred to Roadrunner.

The district court dismissed this claim, noting that "[o]n the evidence presented, it cannot be assumed that if A.G. had been provided a Functional Behavior Assessment, a Behavior Intervention Plan, and a full-time behavioral aide, she would have had fewer behavior problems and would not have posed a danger to herself and others." But this conclusion directly contradicts the conclusions of Dr. Ferro, whose report and testimony plaintiffs submitted in support of their reasonable accommodation claim. Dr. Ferro stated that A.G.'s outbursts at Vista Verde "demonstrate[d] that AG needed the accommodations of an FBA and a BIP to have meaningful access to her education." Dr. Ferro's opinions were corroborated by evidence that A.G.'s classroom teacher

believed that A.G. needed more behavioral support and that the teacher sought assistance to better meet A.G.'s needs. This evidence creates an issue of material fact as to whether accommodations, such as a personal behavioral aide, would have helped A.G. remain at Vista Verde. Moreover, defendants did not dispute in the district court or on appeal that a full-time aide could have been available.

The district court also observed that A.G.'s parents never requested some of the services she later argued the school district should have provided. We agree with this observation, but it overlooks that A.G.'s parents did not have the expertise—nor the legal duty—to determine what accommodations might allow A.G. to remain in her regular educational environment. *See* 1 Americans with Disabilities: Practice and Compliance Manual § 1:247 (2015) ("[A] plaintiff's failure to expressly 'request' an accommodation is not fatal to a claim where the defendant otherwise had knowledge of an individual's disability and needs but took no action."); *Duvall*, 260 F.3d at 1136 (Section 504 "create[s] a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary.").

As a consequence, we conclude that a triable factual dispute exists as to whether the services plaintiffs fault the school district for failing to provide were actually reasonable, necessary, and available accommodations for A.G. Thus, summary judgment on this issue was improper. *See* Fed. R. Civ. P. 56(a).[6]

---

[6] In locating the existence of a genuine issue of material fact on the question of reasonable accommodations, we express no opinion on whether the accommodations discussed in Dr. Ferro's report were

## C.  Deliberate Indifference

Where, as here, the plaintiff seeks damages under section 504 and the ADA, she must show the defendant had notice of her need for an accommodation and "fail[ed] to act." *Duvall*, 260 F.3d at 1139. She can establish notice by showing that she "alerted the public entity to [her] need for accommodation;" or that "the need for accommodation [was] obvious, or required by statute or regulation." *Id.* When an entity is on notice of the need for accommodation, it "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Id.*

The district court dismissed plaintiffs' damages claims after concluding from Dr. Ferro's deposition testimony that plaintiffs did not show the school district was on notice of the need for accommodations. Specifically, the district court relied on Dr. Ferro's testimony that some of the services that plaintiffs claim were necessary were "not legally required by federal or state statute."

Reliance on this testimony was error for three reasons. First, Dr. Ferro was not in a position to provide an expert *legal* opinion. *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." (internal citations omitted)). Second, though the district court

---

reasonable, necessary, and available or even whether all of the interventions she discussed qualify as "accommodations" within the meaning of Section 504. These are questions to be evaluated on remand.

acknowledged the three distinct means for establishing that the school district had notice of the need for accommodation, it conflated the latter two means for establishing notice when it concluded: "[i]f legal necessity was not obvious to Dr. Ferro, then it cannot be assumed that it would be obvious to Defendants." But the fact that an accommodation was legally required by statute or regulation serves as an independent basis to establish notice, *Duvall*, 260 F.3d at 1139; whether the need for accommodation was obvious is a separate factual inquiry. *Id.* ("When the plaintiff has alerted the public entity to his need for accommodation (*or* where the need for accommodation is obvious, *or* required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." (emphasis added)).

Third, the district court erred in failing to recognize that there exists a genuine factual dispute as to whether the need for accommodations was obvious. Dr. Ferro testified—improperly and without citation to authority—that the accommodation was not *legally required*, but she never testified that the need for accommodation was not obvious. To the contrary, Dr. Ferro asserted in her expert report that the documented deterioration in A.G.'s behavior should have triggered accommodations. Plaintiffs also introduced an email from one of A.G.'s teachers complaining that the existing behavioral support regime was insufficient to meet A.G.'s needs, and evidence that A.G.'s parents had previously requested a full-time behavioral aide for A.G. The school district does not expressly rebut plaintiffs' assertion that A.G.'s deteriorating behavior made the need for accommodations obvious but cites instead to the IEP Addendum and argues that it shows A.G. was able to access

her special education classes without the implementation of further services. The parties' competing assertions on this point only establish that a factual dispute exists regarding whether the need for accommodation was obvious and whether the school district was therefore constructively on notice of the need.

In light of the foregoing, we reverse the district court's order granting summary judgment in favor of the school district on plaintiffs' section 504 and Title II claims and remand for further consideration consistent with this opinion.

## III.    Arizona State Law Tort Claims

Plaintiffs also brought tort claims against the school district defendants under Arizona law. The district court dismissed all of these claims, and we reverse in part this portion of the district court's order.[7]

### A. Intentional and Negligent Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress ("IIED") under Arizona law, a plaintiff must prove: (1) extreme and outrageous conduct by the defendant; (2) intent to cause emotional distress or reckless disregard of the near certainty that such distress will result from the defendant's conduct; and (3) severe emotional distress on the plaintiff's part that occurs as a result. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (en banc). A plaintiff

---

[7] Because plaintiffs expressly declined to appeal the district court's grant of summary judgment on their negligent supervision claim, we do not reach that claim.

must show that the defendant's acts were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citing *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)).

To determine whether a defendant's conduct was outrageous and a plaintiff's emotional distress severe, Arizona courts have traditionally considered "defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986) (in banc) (citations omitted). This focus on the plaintiff's susceptibility to emotional distress is also referred to as the "eggshell plaintiff" rule. *See Yanes v. Maricopa County*, No. CV-11-0274, 2012 WL 5989327, at *5 n.9 (Ariz. Ct. App. Nov. 8, 2012) ("The Restatement clearly recognizes the application of the eggshell plaintiff rule to claims for intentional infliction of emotional distress." (citing Restatement (Second) of Torts § 46 cmt. j (Am. Law. Inst. 1965))); *see also* Restatement (Second) of Torts § 46 cmt. f ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.").

Despite this necessarily fact-intensive analysis, it is only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous that an IIED claim should survive summary judgment. *Mintz*, 905 P.2d at 563. Here, the district court ruled that plaintiffs failed to raise a genuine issue of material fact showing the school district

defendants' conduct was extreme and outrageous. We agree. While Officer Welsh's actions arresting A.G. likely would have warranted review by a jury to decide whether they were extreme or outrageous, plaintiffs settled all claims against Welsh and the City of Phoenix.[8] Viewing the evidence in plaintiffs' favor, the conduct fairly attributable to the school district defendants—failure to research whether interventions were appropriate and to provide the necessary accommodations, touching A.G.'s legs in an effort to restrain her, escorting A.G. to the Intervention Room, attempting to seat A.G., and enlisting Officer Welsh's assistance—was not "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency," *Mintz*, 905 P.2d at 563, even considering the "eggshell plaintiff" principle. Because there is no material issue of fact concerning the school district's conduct, plaintiffs' IIED claim was correctly dismissed.

The negligent infliction of emotional distress ("NIED") claim was also correctly dismissed. The district court found the facts alleged by plaintiffs did not rise to the predicate level typically required for such a claim in Arizona. Plaintiffs mention the NIED claim in their opening brief, but their reply brief makes clear that they did not intend to preserve this cause of action when they settled with defendants City of Phoenix and Officer Welsh. We affirm the district court's dismissal of this claim.

---

[8] Although the settlement agreement is not part of the record on appeal, the plaintiffs agree that they are "not relying on the actions of Officer Welsh" to support their tort claims.

## B.  Assault and Battery

To establish a claim for battery under Arizona law, the plaintiff must allege that the defendant intentionally engaged "in an act that results in harmful or offensive contact with the person of another." *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 438 (Ariz. 2003) (en banc) (citing Restatement (Second) of Torts §§ 13, 18). Similarly, a claim for common-law assault requires that the plaintiff allege that the defendant acted "with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehend[ed] imminent contact." *Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987) (citing Restatement (Second) of Torts § 21) (applying Arizona law). The two claims are the same except that assault does not require the offensive touching or contact. *Id.* Both require the defendant have the requisite intent. *Chappell v. Wenholz*, 247 P.3d 192, 195 (Ariz. Ct. App. 2011) ("Battery is an intentional tort under Arizona law."); *Blankinship v. Duarte*, 669 P.2d 994, 999 (Ariz. Ct. App. 1983) (characterizing assault and battery as intentional torts).

Plaintiffs assert that in order to prevail on claims for assault and battery in Arizona, a plaintiff need only show that a defendant intended an act, and that the act caused harmful or offensive conduct. Plaintiffs are mistaken. Under Arizona law, "the act that caused the harm will qualify as intentional conduct only if the actor desired to cause the *consequences*—and not merely the act itself—or if he was certain or substantially certain that the *consequences* would result from the act." *Mein ex rel. Mein v. Cook*, 193 P.3d 790, 794 (Ariz. Ct. App. 2008). In this respect, Arizona law follows the principle from the Restatement (Second) of Torts that: "If the actor knows that the consequences are certain, or

substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Mein*, 193 P.3d at 794 (quoting Restatement (Second) of Torts § 8A cmt. *b*) (emphasis omitted).

Although the district court recited this correct legal standard, it applied it incorrectly. Here, plaintiffs introduced evidence that creates an issue of fact as to whether the school district defendants physically escorted and restrained A.G. when she was not a danger to herself or others and despite knowing of her tactile sensitivity.[9] Viewed in plaintiffs' favor, this evidence prevents entry of summary judgment. *See Duncan*, 70 P.3d at 438 (Arizona law provides a remedy for intentional acts that result in "harmful or offensive contact"); *see also Garcia*, 826 F.2d at 809 n.9. As a consequence, summary judgment on plaintiffs' assault and battery claims was improper.[10]

---

[9]    We recognize that, in certain circumstances, restraining a child with tactile sensitivity may be necessary to prevent the child from engaging in behavior that is self-injurious or injurious to others. Here, plaintiffs agree that school district staff were authorized to physically restrain A.G. if she became a danger to herself or others. But A.G.'s mother and Officer Welsh testified in their respective depositions that A.G. was not a danger to herself or others when district staff physically escorted her to the intervention room on two occasions. Furthermore, according to Principal Lorna Green, Roadrunner school had a policy of physically escorting children who were not a danger to themselves or others, notwithstanding a particular child's tactile defensiveness.

[10]    The parties stipulated that A.G. would not testify. The district court seemed to conclude that the assault and battery claims could not be established without A.G.'s testimony that what she experienced was harmful or offensive, or that she was put in imminent apprehension of receiving such contact. We do not agree that A.G. was required to testify

## C.  False Imprisonment

To establish a claim for false imprisonment in Arizona, a plaintiff must show detention without consent or lawful authority. *See Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975) (in division). "The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention." *Id.* "[W]here a person is a danger to [herself] or others because of [her] mental condition, . . . it is lawful to restrain [her] so long as necessary until other lawful measures can be followed." *Furrh v. Ariz. Bd. of Regents*, 676 P.2d 1141, 1146 (Ariz. Ct. App. 1983).

Plaintiffs argue that the school district falsely imprisoned A.G. when they physically restrained her, despite A.G.'s IEP Addendum providing that she would not be restrained unless she presented a danger to herself or others, and the district's training manuals directing staff to stop transporting a student who is struggling against an escort. The district court ruled that, in light of the numerous instances reflected in the record where A.G. is alleged to have presented a danger to herself or others, there was evidence that she presented such a danger on February 3, 2010 and March 23, 2010, dates when defendants could not have avoided restraining her. But the district court neglected to consider the evidence in the record showing that A.G. presented no such danger on those occasions. Because plaintiffs introduced evidence sufficient to create a genuine issue of material fact as to whether A.G. was a danger to herself or others when school district staff

to support these claims. *See State v. Angle*, 720 P.2d 100, 105 (Ariz. Ct. App. 1985), *affirmed in part, vacated in part on other grounds*, 720 P.2d 79 (Ariz. 1986).

restrained her, summary judgment on plaintiffs' false imprisonment claim was improper.[11]

## IV.    Taxation of Costs

Because it is necessary to reverse the order granting summary judgment on plaintiffs' section 504 and Title II claims, the order denying costs to the defendants is vacated. *See Atonio v. Wards Cove Packing Co.*, 10 F.3d 1485, 1504 (9th Cir. 1993) (citing *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1521 (9th Cir. 1987)).

**REVERSED in part; AFFIRMED in part; VACATED in part; and REMANDED. Each party shall bear its own costs on appeal.**

---

[11]   We hold that the district court erred in granting summary judgment on plaintiffs' assault, battery, and false imprisonment claims because plaintiffs succeeded in raising a genuine issue of material fact as to each of these claims. *See, e.g.*, *Tekle v. United States*, 511 F.3d 839, 854–55 (9th Cir. 2006). We express no view on what the result should be on any of those claims on remand.