NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SANDRA NELSON, | No.   16-16387 |
| Plaintiff-Appellee, | D.C. No. 2:15-cv-02006-CKD |
| v. | |
| JENNIFER MCFALL and EARL MCFALL, | MEMORANDUM* |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Eastern District of California
Carolyn K. Delaney, Magistrate Judge, Presiding

Argued and Submitted August 13, 2018
San Francisco, California

Before:  BEA and MURGUIA, Circuit Judges, and SOTO,** District Judge.

Earl and Jennifer McFall ("the McFalls") operated Dragonfire Farm ("Dragonfire"), a facility to train and board horses. Nelson owned several horses and contracted with the McFalls to train some of the horses.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

In early 2005, Nelson loaned the McFalls $150,000. The parties executed a promissory note with the assistance of Jennifer McFall's father, David Chang. The promissory note was signed by all parties and dated May 2005.[1] The promissory note stated that:

> For value received, Earl and Jennifer McFall promise to pay Sandra Nelson or order at 242 Nevada Street, Nevada City, California 95959 the lump sum principal of One Hundred and Fifty Thousand Dollars ($150,000) on May 1, 2010. Upon maturity of this Note, Sandra Nelson agrees that Earl and Jennifer McFall have the option to extend the maturity for up to five (5) more years to May 1, 2015. Sandra Nelson further agrees that the repayment of this Note will not be accelerated before maturity even if this Note is extended to May 1, 2015. **In lieu of simple interest payment of four percent (4%) per year fixed for the life of the loan and payable monthly ($500 per month) on the first day of the month, Earl and Jennifer McFall have the option to waive the monthly training fees for two (2) of Sandra Nelson's horses.** Earl and Jennifer McFall have the option to prepay this loan at any time without penalty.

From 2005 to 2009, the McFalls credited Nelson two training fees. Every month the McFalls sent Nelson an invoice, which either used the word "credit" or stated "Interest income paid on $150K Note in the form of two B&T credits" or "Interest Income paid to MAM,[2] by Dragonfire, in the form of 2 Training Credits." At the time of contracting, the value of each training credit was $775, which

---

[1] There is a disagreement as to if the promissory note was signed in 2005 or signed in 2007 and then back-dated. However, this dispute is not material in this matter and is not a barrier to summary judgment.

[2] Madison Avenue Morgans ("MAM") is Nelson's business.

resulted in a credit of $1550 to Nelson.[3] The McFalls assert that they understood that any amount greater than $500 would be reduced from the principal of the loan. Nelson asserts that the credit only applied to interest and did not affect the principal, in effect charging up to 18% interest on the loan when the McFalls chose to pay interest in the form of credits.

In 2009, Mr. Chang contacted Nelson regarding the promissory note to "modify its terms" to amortize the loan. In August 2009, the McFalls began exercising the option to pay the $500 monthly interest payment and the option to extend the maturity of the loan for five years to May 1, 2015. Shortly thereafter, the parties ceased their business relationship.

The McFalls did not make a lump-sum payment of $150,000 on May 1, 2015. On September 22, 2015, Nelson filed a claim for breach of promissory note in the Eastern District of California based on diversity jurisdiction.[4] Nelson filed a motion for summary judgment, which included a declaration with attachments. The McFalls objected to multiple parts of Nelson's declaration.

The district court heard oral argument and later issued a written order. The district court summarily denied the McFalls' relevant evidentiary objections. The

---

[3] The value of the training credit increased throughout the life of the loan to $1,175 each in 2009, resulting in a credit of $2350 to Nelson.

[4] Both parties were citizens of California in 2005. Between 2005 and when the Complaint was filed, Nelson became a citizen of Washington, creating diversity of citizenship. The amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332.

district court found that the note was not reasonably susceptible to the meaning advanced by the McFalls, and therefore the promissory note should be interpreted as applying the training credits solely to the interest on the loan. Further, the district court found that the promissory note was not usurious, as the contingency was under the debtor's control. The district court entered judgment in favor of Nelson in the amount of $150,000. The McFalls timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review orders granting or denying motions for summary judgment *de novo*. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016). We review *de novo* the district court's interpretations of state law. *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016). We review *de novo* the district court's interpretations of contract provisions. *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016).

1.    The promissory note is governed by California state law, specifically California Civil Code §§ 1635–1663. California law requires contract interpretation to "give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful," Cal. Civ. Code § 1636; *see Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017), and that "[w]hen a contract is reduced to writing, the intention of the

parties is to be ascertained from the writing alone, if possible," Cal. Civ. Code § 1639.

In addition to the language of the contract or promissory note, the trial court may, and in most circumstances must, preliminarily consider extrinsic evidence to determine if ambiguity exists. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012) (stating that "courts may preliminarily consider any extrinsic evidence") (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989–90 (9th Cir. 2006)); *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010) (stating a two-step process for considering extrinsic evidence); *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 563 F.3d 777, 788 (9th Cir. 2009) (citations omitted) (stating that the extrinsic evidence "must" be preliminarily considered). "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas and Elec. Co. v. G.W. Thomas Drayage Co.*, 442 P.2d 641, 644 (Cal. 1968) (en banc). "Accordingly, even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Dore v. Arnold Worldwide, Inc.*, 139 P.3d 56, 60 (Cal.

2006) (internal quotation marks and alteration omitted) (quoting *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Ct. App. 1998)).

"First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *F.B.T. Prods., LLC*, 621 F.3d at 963 (quoting *Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 (Ct. App. 1992)). The determination of ambiguity is a question of law, not fact. *Id.*

In this matter, the district court correctly considered the plain language of the promissory note and the evidence submitted by the parties relating to any potential ambiguity. The McFalls submitted "declarations regarding their intent in entering into the promissory note." The relevant question was whether the McFalls' evidence revealed a possible interpretation to which the promissory note's language was reasonably susceptible. *See Pac. Gas and Elec. Co.*, 442 P.2d at 644. The district court found that "[g]iven the plain language of the note, it is not reasonably susceptible to the meaning advanced by [the McFalls]," that the training fee credits could be utilized to reduce the principal of the loan.

The promissory note does not communicate the McFalls' asserted intent that any credit over $500 would act to reduce the principal. The McFalls' evidence regarding their intent amounts to no more than their "uncommunicated subjective intent," which is insufficient to override the written language. *See Winet*, 6 Cal. Rptr. 2d at 558 ("[T]he parol evidence tendered by Winet is his uncommunicated subjective intent as to the meaning of the words of the contract. Winet does not suggest that he ever communicated to Price or his attorney his intent to retain the right to sue Price in the future. Further, parol evidence is admissible only to prove a meaning to which the language is 'reasonably susceptible[,]' not to flatly contradict the express terms of the agreement." (footnote and citations omitted)).

Additionally, the district court correctly reviewed the emails submitted by Nelson, which attempted to modify the promissory note to allow the training credits to reduce the principal. The emails lack any indication that the McFalls believed the training credits applied to the principal from the genesis of the promissory note.

Even without the emails, the McFalls failed to provide any evidence that creates an ambiguity regarding their intent at the time of contracting. The McFalls provided evidence of two reasons why we should conclude that the promissory note was ambiguous. First, the McFalls point to Nelson declaring the full value of the training fees as interest income. This does not indicate what the McFalls

understood. It also indicates that Nelson did not believe that the training fees were contributing to the principal of the loan. Second, the McFalls assert that the promissory note should be read in conjunction with the numerous boarding and training contracts under Section 1642 of the California Civil Code. Reading these contracts together does not indicate any ambiguity within the promissory note. Instead, the training contracts would serve only to express a value for the credits, which is included within the monthly statements to Nelson.

At most, the McFalls showed no more than a subjective misunderstanding, which does not amount to an ambiguity within the promissory note. *See Winet*, 6 Cal. Rptr. 2d at 558 ("It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce."). The district court was correct in ruling that the promissory note was not reasonably susceptible to the interpretation put forth by the McFalls.

2.     When determining an ambiguity, the district court "provisionally receives" evidence "without actually admitting" it. *F.B.T. Prods., LLC*, 621 F.3d at 963 (citation omitted). The evidence is admitted only at the second step if the contract is reasonably susceptible to multiple interpretations. *Id*. The district court in this matter determined that the promissory note was not reasonably susceptible to the McFall's interpretation and therefore never admitted the extrinsic evidence. Accordingly, the district court was correct in considering the objected-to evidence.

3. Finally, the McFalls argue that the contract should be interpreted to make it lawful under Section 1643 of the California Civil Code. This argument fails as the unambiguous contract does not violate California's usury law.

A loan with an interest rate greater than 10% per annum is usurious.[5] "Where the excessive interest is caused by a contingency under the debtor's control, the transaction will not be deemed usurious." *Sw. Concrete Prod. v. Gosh Constr. Corp.*, 798 P.2d 1247, 1250 (Cal. 1990). "[A] debtor cannot bring his creditor to the penalties of the usury law by his voluntary default in respect to the obligation involved, where no violation of law is present at the inception of the

---

[5] Loans of money "primarily for personal, family, or household purposes" shall not have an interest rate "exceeding 10 percent per annum[.]" CAL. CONST. art. XV, § 1(1). "[A]ny loan or forbearance of any money, . . . which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes[.]" *Id*. Any loan of money for any use other than primarily for personal, family, or household purposes described in paragraph 1 of Section 1 of Article 15 of the California Constitution shall not have a rate "exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act[.]" *Id*. at § 1 (2). In the beginning of 2005, the rate established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act did not exceed five percent (5%). FEDERAL RESERVE BANK OF SAN FRANCISCO *Discount Rate* https://www.frbsf.org/banking/discount-window/discount-rate/#2005 (last visited August 17, 2018). Therefore, the usury rate would be ten percent (10%) regardless of the primary purpose. *See* CAL. CONST. art. XV, § 1.

16-16387

contract." *Sharp v. Mortg. Sec. Corp. of Am.*, 9 P.2d 819, 820 (Cal. 1932) (en banc).

As the training credits were solely interest, the interest paid exceeded the statutory maximum. Therefore, the promissory note included a contingency that resulted in an effective interest rate above the statutory maximum. However, the contingency was within the McFalls' control, as they had the option to pay $500 per month, which would amount to only 4% interest per annum. The district court was correct in ruling that the promissory note was not usurious.

The district court's ruling granting summary judgment in favor of Nelson is affirmed.

**AFFIRMED.**