NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 10 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JESIKA SMITH; O. A., a minor, by and through his Guardian ad Litem, Jesika Smith,

Plaintiffs-Appellants,

v.

ORCUTT UNION SCHOOL DISTRICT,

Defendant-Appellee.

No.   21-55846

D.C. No.
2:20-cv-00087-RGK-MAA

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted July 26, 2022
Pasadena, California

Before:  PAEZ and WATFORD, Circuit Judges, and BENNETT,[**] District Judge.

O.A. is a ten-year-old child who has been diagnosed with autism.  He

receives a public education through the Orcutt Union School District ("OUSD").

O.A. has struggled with significant behavioral issues during his time in school.  At

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

times, he has been accompanied throughout the school day by one-to-one aides who would monitor his safety. As part of the treatment for his autism, O.A. receives a form of therapy called Applied Behavior Analysis ("ABA") therapy. O.A.'s mother requested that his school allow outside ABA therapists to accompany him during the school day, but OUSD denied the request. O.A., by and through his mother, subsequently brought this suit, claiming that that OUSD violated his rights under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") by failing to accommodate his outside ABA therapists and therefore denying him access to an education. After a two-day bench trial, the district court granted OUSD's motion for a judgment on partial findings under Federal Rule of Civil Procedure 52(c). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** O.A. first argues that the district court made a procedural error by deciding the case under Rule 52(c) because it did not specify whether it considered only the evidence presented in O.A.'s case in chief or all the evidence presented at trial in reaching its judgment. He also questions whether proceeding under Rule 52(c) was proper after the close of evidence, asserting that the rule is unclear about whether a court may do so. The district court explicitly stated that it considered only the evidence in O.A.'s case-in-chief, however. And while it is true that district courts generally enter judgments made after the close of evidence under

Rule 52(a) rather than Rule 52(c), *see U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713–14 (1983), it was not improper for the district court to enter judgment under Rule 52(c). *See Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1031 (9th Cir. 1996).

**2.** When a district court enters judgment under Rule 52(c), "we review its findings of fact for clear error and its conclusions of law *de novo*." *United Steel Workers Loc. 12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1114 (9th Cir. 2013). "If the district court applied the correct legal rule, we may set aside its findings of fact as clearly erroneous only if they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id*. (internal quotation marks and citation omitted).

To establish a violation of the ADA and Section 504, O.A. had to prove that his school "denied [him] services that [he] needed to enjoy meaningful access to the benefits of a public education."[1] *A.G. v. Paradise Valley Unified Sch. Dist. No.*

---

[1] O.A. argues that the district court erred by "applying the 'meaningful access to educational benefit' standard under . . . Section 504 . . . and leaving the 'equal access' standard under the American with Disabilities Act . . . undecided." This argument is baseless because the statutes use the same standard. *See K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013). Indeed, the terms "meaningful" and "equal" have been used interchangeably by both this court, *see Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020), and the Supreme Court, *see Alexander v. Choate*, 469 U.S. 287, 306 (1985). While neither statute guarantees equality of outcome, they both require that individuals with disabilities have an equal opportunity to access benefits and services. *See id.* at 304.

*69*, 815 F.3d 1195, 1204 (9th Cir. 2016). The district court found that O.A.'s evidence established that he needs medical treatment for his autism, that ABA therapy is the best treatment available, and that he benefits from receiving the treatment. However, it determined that there was insufficient evidence in the record to prove that O.A. needs his outside ABA therapists to accompany him in school in order to meaningfully access his education.

This finding is not clearly erroneous. O.A.'s evidence does not address the extent to which his behavioral issues affected his ability to remain in the classroom and participate in instructional time. There is nothing in the record about how often O.A. would elope from the classroom, soil himself, or need to be removed from the classroom because of other behavioral problems. Nor is there any discussion about how much class time O.A. would miss during each incident. And when O.A. disenrolled from OUSD, it was because his mother chose to homeschool him, not because he was barred from attending. While the evidence in the record suggests that O.A. had serious behavioral issues, he did not offer anything to show how those issues kept him from accessing an education, and the district court was not required to draw the inference that they did.

Nor did any of the evidence in the record address whether or how ABA therapy would help O.A. in *particular* access an education. Instead, it discussed the value of ABA therapy for children with autism generally. Dr. Betty Jo

4

Freeman ("Dr. Freeman"), an expert in autism, explained that ABA therapy in school could help a child "become a good student in a classroom" by "dealing with all the other things" outside of learning. However, Dr. Freeman's testimony did not mention O.A.'s specific needs. Indeed, she said that she had "not seen" O.A. and could not make "individual recommendations" regarding his care. And at no point did she say that ABA therapy was universally necessary for children with autism to have meaningful access to school. While she explained that "some children" would require it to "access the school program," she did not opine about whether O.A. fell into that category.

The evidence in the record demonstrating that ABA therapy is medically necessary for O.A. is not enough to establish that it is necessary for him to access his education. O.A. offered evidence that his doctor had prescribed ABA therapy as treatment for his autism and that Medi-Cal funded it on the basis of medical necessity. However, the evidence does not link the medical necessity of his treatment to his ability to access an education. Nothing in the record discusses whether the treatment would be of particular use in allowing O.A. to remain in class, engage with the material, or otherwise access his education. *C.f. Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 79 (1999).

In light of the full record, the district court's finding that O.A. failed to meet his burden to establish that his desired ABA therapists were necessary to allow him meaningful access to an education was not clearly erroneous.

**AFFIRMED.**